[Sac. No. 6319.   In Bank.   Dec. 11, 1952.]

CALIFORNIA TOLL BRIDGE AUTHORITY (a Corporation), Petitioners, v. THOMAS H. KUCHEL, as State Controller, Respondent; CITY AND COUNTY OF SAN FRANCISCO, Intervener.

44

Edmund G. Brown, Attorney General, E. G. Funke, Assistant Attorney General, Ralph W. Scott, Deputy Attorney General, and Robert E. Reed, for Petitioners.

46

John W. Collier, City Attorney (Oakland), Daniel J. Mc-Namara, Deputy City Attorney, Thomas M. Carlson, City Attorney (Richmond), Fred C. Hutchinson, City Attorney (Berkeley), J. P. Clark, City Attorney (Alameda), and J. Frank Coakley, District Attorney (Alameda), as Amici Curiae on behalf of Petitioners.

Ralph I. McCarthy and Lloyd C. Graybill for Respondent.

Dion R. Holm, City Attorney, Walker Peddicord and William F. Bourne, Deputy City Attorneys, A. Dal Thomson, Public Utilities Counsel, for Intervener.

SHENK, J.—The California Toll Bridge Authority seeks a writ of mandate to compel the respondent State Controller to audit and approve a claim for printing costs in connection with the Authority's resolutions to issue bonds to finance the construction of additional approaches to the San Francisco-Oakland Bay Bridge. The director of the Department of Public Works is also a petitioner. An alternative writ issued. The respondent filed a demurrer and an answer to the petition. The city and county of San Francisco intervened by way of demurrer and answer to oppose the granting of the writ. The city's petition in intervention also shows that on June 17th, 1952, it filed in the superior court a complaint to enjoin the Authority from issuing and selling bonds for the construction of additional approaches. The petitioners have interposed a demurrer to the city's petition. Other bay cities and counties have filed briefs in support of the petitioners' application for the writ.

Mandamus lies to compel performance of official duty in connection with the issuance of duly authorized bonds of the Authority. (Code Civ. Proc., §§ 1085, 1086; *California Toll Bridge Authority* v. *Kelly,* 218 Cal. 7 [21 P.2d 425].)

The injunction action brought by the city is not an adequate remedy to the same end. That action looks to the enjoining of the bond issue. The city claims the appropriateness and adequacy of that action merely for the purpose of trying factual issues, if any such issues are necessary to be determined.

As noted, the respondents and the intervener filed both demurrers and answers. The demurrers admit the alleged facts and place in issue the existence of the statutory power of the Authority to issue the bonds here in question. The answers

purport to raise factual issues by questioning the nature of the proposed constructions as "additional approaches." If the Authority does not have the power invoked by it under existing statutes, the questions raised by the answers become immaterial.

The demurrers also necessarily admit the salient historical facts.

The California Toll Bridge Authority Act was adopted in 1929. (Stats. 1929, p. 1489, and amendments, now Sts. & Hy. Code, §§ 30000-30506, Stats. 1947, ch. 176, p. 702.)  That general act declares the state policy (§ 30001) to acquire and own all toll bridges situated upon or along any of the highways of the state, and ultimately to eliminate all toll charges. Thereby the California Toll Bridge Authority was created to carry out the legislative objective.  The Authority was vested with the general power to construct "toll bridges or other highway crossings," to issue bonds to provide for the cost of construction, and to retire the bonds from bridge revenues. (Sts. & Hy. Code, §§ 30000-30506.)

By Statutes of 1933, chapter 5, page 11, the Legislature made appropriations to the State Department of Public Works from the State Highway Fund of annual sums up to an aggregate of $6,600,000 for the acquisition and construction of approaches to the proposed San Francisco-Oakland Bay Bridge. By Statutes of 1933, chapter 9, page 16, the Department of Public Works was authorized and directed to construct or cause to be constructed designated approaches to the Bay Bridge.  The enactment described generally specified approaches to be constructed from the westerly and the easterly ends of the Bay Bridge.  These were to be connected with the streets and highways when the bridge was ready for use. The construction of "said approaches" was to begin on the sale of the first block of bonds issued for the construction of the bridge under the 1929 act. The department was charged with the permanent duty to maintain and operate the bridge and approaches as a primary state highway.  The "cost of constructing the said approaches and of maintaining and operating the said toll bridge and the approaches "was required to be paid by the Department of Public Works out of funds made available for such purpose other than the proceeds of bonds issued by the Authority for the construction of the bridge, and other than the tolls and revenues received from the use and operation of the bridge, so long as any bonds or other obligations issued by the Authority for

bridge construction remained outstanding and unpaid. The department was authorized and directed to make expenditures for the operation and maintenance of "said bridge and approaches" from moneys accruing in the state highway maintenance fund available for the widening, resurfacing and reconstruction of state highways, or any other fund made available for such purposes. At the same session of the Legislature (Stats. 1933, ch. 24, p. 58) it was provided that when all bonds issued by the Authority for the construction of the bridge have been fully redeemed, paid and retired, the Authority should continue to fix and collect tolls on the Bay Bridge until all moneys appropriated by the state and expended from the State Highway Fund for the acquisition and construction "of the highway approaches" have been fully repaid to the state.

The bridge and approaches were completed and opened to public traffic on November 12, 1936. In the 1947 codification (Stats. 1947, ch. 176, p. 702), chapters 9 and 24 of the 1933 statutes, insofar as they remained applicable, were included in the Streets and Highways Code as sections 30600-30608. Section 30605 provides that the cost of "constructing the approaches and of maintaining and operating the toll bridge and approaches" be paid by the Department of Public Works out of funds made available other than the proceeds of bonds issued for the construction of the toll bridge and other than the tolls and revenues as long as any construction bonds are outstanding and unpaid, except that in a proceeding for refunding or retiring outstanding construction bonds the Authority may provide for the cost of operation of the bridge and any additional bridge or other crossing from tolls and revenues. (§ 30222 applied all the benefits of the law to refunding bonds.)

Section 30606 provides that the department of public works shall make expenditures "for the operation and maintenance of the toll bridge and approaches" from the State Highway Fund, except that when thereafter the authority provides for the payment of the cost of the operation of the bridge and any additional bridge or other highway crossing, from the tolls and revenues of the bridge and additional bridge or other crossing, the expenditures shall be made only for the purpose of the physical maintenance of the bridge and additional bridge or other crossing.

Section 30607 provides that after all bonds have been paid and retired, the Authority shall continue to fix and collect

tolls on the bridge until all money that has been appropriated by the state and expended from the State Highway Fund "for the acquisition and construction of the highway approaches leading to and upon the toll bridge at both the Alameda County and San Francisco ends thereof has been fully repaid to the State" and credited to the State Highway Fund. Reimbursement is provided to be made from surplus net revenues after all bond obligations have been fully redeemed and the bonds retired.

Section 30608 states that in any proceeding after July 17, 1951, for the issue of new bonds for the purpose of refunding or retiring bonds outstanding, there be included bonds in an amount sufficient to repay to the state all money appropriated and expended from the State Highway Fund for "the acquisition and construction of the highway approaches leading to and upon the toll bridge as described" in chapter 9 of the 1933 Statutes, but not to exceed the sum of $6,600,000, repayment to be made to the state from the proceeds of the bonds and credited to the State Highway Fund.

The construction bonds issued by the Authority were refunded prior to 1951, that is, in 1944. On November 1, 1951, there remained outstanding and unpaid refunding bonds in the principal sum of $6,863,000. In that month by resolution and by subsequent supplementary resolution the Authority authorized the creation and issuance of bonds not to exceed $80,000,000 in Series A, B and C, with a final maturity date of March 1, 1973. Series A aggregating $21,000,000 provides for the call and redemption of the outstanding bonds and interest, for reimbursement to the state of the designated $6,600,000 advanced from the State Highway Fund for the construction of the approaches, and for the payment of expenses of the issuance and sale of the Series A bonds and the redemption of the outstanding bonds. No question is raised concerning the validity of Series A bonds. They have been issued and sold. The state has been reimbursed for the advances from the State Highway Fund.

Each of the proposed B and C Series is in the principal sum of $25,000,000. They are to be secured by tolls in addition to the tolls collected for the operation of the bridge and necessarily the tolls collected for the retirement of the Series A bonds. Proceeds from the sale of Series B are to be applied to the construction of proposed approaches on the east or Alameda side of San Francisco Bay. Proceeds from the sale of

Series C are to be applied to the construction of proposed approaches on the west or San Francisco side of the bay.

The proposed approaches for the Alameda side are all located within a 10-mile radius of the Toll Plaza in Alameda County and are described as:

(1) Webster Street Tube, including connections from East Shore Highway in Oakland to Atlantic Avenue in Alameda, being a portion of State Highway Route 226;

(2) Addition of third level to the existing distribution structure of the bridge, being a portion of State Highway Route 5;

(3) East Shore Freeway from Fallon Street in Oakland to the existing El Cerrito overhead, being a portion of State Highway Route 69;

(4) MacArthur Highway from the existing distribution structure to Wellesley Avenue in Oakland, being a portion of State Highway. Route 5.

The proposed approaches on the San Francisco side are to be located within a 10-mile radius of the Fifth Street Ramp and are described as:

(1) Bay Shore Highway from the existing bridge to the south city limits of San Francisco, being a portion of State Highway Route 68, together with the 13th Street connection therefrom to Mission Street, being a portion of State Highway Route 2;

(2) Connection at or near First Street from the bridge to the Embarcadero and extending therefrom in a northerly and westerly direction from such connection to Lombard Street and Van Ness Avenue, being a portion of State Highway Route 224.

The cost of completing the described approaches to freeway status is estimated at $168,000,000. State highway funds to the extent of $45,000,000 have already been spent or budgeted for expenditure on or before July, 1953, and an additional $73,000,000 is contemplated to be provided from state highway funds which, together with the proceeds from the sale of the proposed Series B and C bonds, will be sufficient to complete the approaches on both sides of the bay.

The demurrers necessarily admit the alleged desirability of constructing the proposed improvements to integrate and extend the existing system of approaches and thereby afford the maximum convenience of access to and egress from the bridge. The admitted facts disclose the general nature and location of the proposed constructions. With one possible

exception—the addition of a third level to the east distribution structure, a portion of State Highway Route 5—the proposed constructions are extensions or improvements to the Bay Bridge approaches. It must therefore be apparent that they are not essential to provide access to or egress from the bridge. Essential approaches exist for those purposes. Admittedly the proposed constructions simply integrate, extend and add to an existing system of approaches.

The petitioners necessarily concede that the 1933 special act, chapter 9, provided for the specific approaches which have been constructed, and that the codification of the 1933 act (Sts. & Hy. Code, §§ 30600-30608), also applies to the existing approaches. They also concede that the cost of the original approaches was to be met by the department of public works from funds made available for that purpose other than the proceeds of the construction bonds. But they contend that there is nothing in the 1933 statute as codified which limits or restricts the construction of additional approaches to be paid for from the proceeds of the additional bonds authorized by the Authority for the purpose and which are contemplated to be retired from bridge tolls. They invoke the general powers conferred upon the Authority pursuant to sections 30000-30506 of the Streets and Highways Code. Thus the claimed unrestricted effect of the provisions is said to proceed from the general definition of "Toll Bridge" to include "approaches" (§ 30004), and the general authority to provide for enlargements or extensions of toll bridges or to change the structure or design thereof to afford new or greater facilities and provide for the issuance of additional bonds in connection therewith. (§§ 30224-30232.) It is also contended that the 1933 special acts became obsolete when the Reconstruction Finance Corporation which had purchased the original bonds and urged the 1933 special enactments (see *California Toll Bridge Authority* v. *Kelly, supra*, 218 Cal. 7), had been repaid in 1939, and the bonds refunded in 1944 and 1951.

The deciding factor is that neither in the original statutory provisions nor in the codified sections was power vested in the Authority to issue bonds for the construction of the approaches to the San Francisco-Oakland Bay Bridge. When the Legislature in 1933 amended the general 1929 statute to add the definition of "toll bridge" as inclusive of "approaches" (Stats. 1933, ch. 10, p. 20, 22, now Sts. & Hy. Code, § 30004), it also enacted chapter 9 (Stats. 1933, p. 16), which dealt

specifically with the San Francisco-Oakland Bay Bridge approaches. Chapter 9, insofar as applicable by reason of completion of the approaches was carried into the 1947 codification (Sts. & Hy. Code, §§ 30600-30608), after the Reconstruction Finance Corporation had been repaid and the bonds refunded in 1944. Section 30600 defines ''toll bridge'' to mean ''that certain bridge across San Francisco Bay known as the San Francisco-Oakland Bay Bridge and the approaches thereto.''

■ The general power to provide for ''additional transportation facilities'' does not include approaches. The definition of ''additional transportation facilities'' refers to passenger carrying means and equipment (§§ 30005-30006), such as the railroad facilities which were added after the completion of the Bay Bridge. ■ Provision that the construction bonds should not be a debt of the state but should be retired from revenues collected from the operation of the bridge does not negative state obligation for improvements to existing approaches after completion and as public convenience may require. ■ The specific provisions hereinabove noted which make charges on the department of public works and on the State Highway Fund for the construction and financing of the approaches, suggest the state obligation after completion of the designated approaches and reimbursement from tolls to the State Highway Fund for advances in aid of construction. ■ The provision that the cost of construction including the construction of the approaches should not be an obligation of the state is complied with by the repayment from the 1951 refunding bond sale proceeds of contributions from the State Highway Fund. (§ 30608; see *In re California Toll Bridge Authority,* 212 Cal. 298 [298 P. 485]; *California Toll Bridge Authority* v. *Kelly, supra,* 218 Cal. 7.)

■ Whatever may be the effect of the general powers of the Authority in connection with the construction of ''toll bridges and other highway crossings'' (and approaches), as designated in the codification of the general act (§ 30000-30506) including the financing of the cost thereof, it is certain that the construction and financing of the San Francisco-Oakland Bay Bridge approaches are still subject to the special legislative provisions as codified (§§ 30600-30608).

The legislative history may not be overlooked. That history discloses a statutory framework by which the Authority was empowered to issue bonds for the construction of the Bay Bridge, and by which separate and specified means were pro-

vided to supply funds for the cost of construction of described approaches to the Bay Bridge on both sides of the bay. Power was not given to issue bonds for the construction of the approaches. And any such power otherwise implied under the general act was divested by the special enactments of 1933.

Nor can we read from either the general or the special statutory provisions the power, after the Bay Bridge has been constructed and completed with ''said'' or ''the'' specified approaches, to issue bonds for ''additional approaches,'' at least separately and apart from the exercise of any granted power to enlarge, extend or add to the existing Bay Bridge structure or Bay Bridge crossing.

It is not questioned that the cardinal rule of statutory construction must accord to language the legislative intention; that such legislative intention controls, indeed, it is the law itself; that where the Legislature has clearly set forth the purpose of the acts and has enacted a plan or design for its accomplishment, the implemental portions of the act must be construed so as to achieve the objective, and that the Authority may exercise only such additional powers as are necessary for the due and efficient administration of the powers expressly granted or as may fairly be implied from the granted powers. (*Department of Motor Vehicles* v. *Industrial Acc. Com.*, 14 Cal.2d 189, 195 [93 P.2d 131]; *Dickey* v. *Raisin Proration Zone No. 1*, 24 Cal.2d 796, 802, 810 [151 P.2d 505, 157 A.L.R. 324] citing cases; *People* v. *Centro-O-Mart*, 34 Cal. 2d 702, 704 [214 P.2d 378].) Since the Authority was created by and derives its powers from the Legislature, it does not have rights which are superior to the legislative will. (*Cf. California Emp. Etc. Com.* v. *Payne*, 31 Cal.2d 210, 215 [187 P.2d 702].) The power sought to be exercised by the Authority cannot be read into the statutes. In fact the necessary implication is a denial of that power. The general power may not supply it when the special statute denies it. And in any event section 30605 prevents the issuance of additional bonds so long as the refunding bonds, Series A remain outstanding. The court may not overlook the effect and force of the statutory provisions merely because the 1933 statute, chapter 9, was enacted at the suggestion of the Reconstruction Finance Corporation which has been repaid for its investment.

It is within the power of the Legislature to enact desirable changes. The record shows that the existence of the Authority's power to authorize the B and C series of bonds

was deemed doubtful. The subject matter of legislation to authorize them was included in the call for the First Extraordinary Session in 1952 (Senate Journal 1st Ex. Sess. 1952, p. 2). Bills to that end were submitted to the Legislature together with the opinion of the Legislative Counsel (Op.Legis. Counsel #752, Feb. 8, 1952), advising that the Authority did not have the power without statutory amendment to finance the proposed additional approaches by the issuance of bonds. Enabling legislation was given extensive consideration by both houses but the bills failed of final passage. Finally the Legislature was requested to enact legislation to validate the B and C Bond series. The requested validation also failed of passage.[1] The fact that both enabling and validation enactments were requested, presumably at the instance of the Authority, and were rejected, is persuasive that the power now sought to be exercised was not deemed included within the existing statutes and was not deemed desirable for inclusion.

It necessarily follows from the foregoing that the California Toll Bridge Authority was and is without power to authorize the B and C Series of bonds and that power to that end must come from the Legislature. This conclusion renders unnecessary the determination or discussion of other questions in this proceeding.

The application for the peremptory writ of mandate is denied and the alternative writ is discharged.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Petitioners' application for a rehearing was denied January 8, 1953.

---

[1] The parties make the following references to the legislative record: Senate Bills 14 and 21: Senate Final History, 1st Ex. Sess. 1952, pp. 48, 50. Assembly Bill 30: Senate Journal 1st Ex. Sess. Apr. 2, 1952, p. 209. Assembly Bill 33: Assembly Final History 1st Ex. Sess. 1952 p. 87; Assembly Journal, 1st Ex. Sess. Apr. 2, 1952, p. 583. Assembly Bills 18, 19, 1st Ex. Sess. 1952: Assembly Journal, 1st Ex. Sess. Mar. 19, 1952, p. 197; Assembly Journal 1st Ex. Sess. Mar. 25, 1952, p. 259; Senate Journal, 1st Ex. Sess. Apr. 2, 1952, p. 213.