[Civ. No. 16593.   First Dist., Div. One.   May 24, 1956.]

HELEN HURLIMANN et al., Appellants, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as Executor, etc., et al., Respondents.

Paul Friedman for Appellants.

John Francis Digardi, Peart, Baraty & Hassard and Robert D. Huber for Respondents.

WOOD (Fred B.), J.—This is an action against the executor of the will of Dr. Modesto A. Giordano, brought by Helen Hurlimann and her husband Armin Hurlimann for damages allegedly caused by negligent medical treatment of Helen in 1951, the true nature of which, the complaint avers, was not discovered by plaintiffs until she underwent an operation performed by other physicians on the 23d day of March, 1954.

Meanwhile, Dr. Giordano died on the 18th of August, 1953. His will was probated and an executor appointed. The first notice to creditors was published on September 22, 1953.

Plaintiffs filed their respective claims against the estate on the 6th of May, 1954, several weeks after the expiration of the six months' period prescribed by section 707 of the Probate Code.

Defendant demurred upon the asserted grounds that the complaint did not state a cause of action and that the alleged cause was barred by the provisions of section 707 of the Probate Code and subdivision 3 of section 340 of the Code of Civil Procedure. The demurrer was sustained without leave to amend. Judgment was rendered thereon and the plaintiffs have appealed.

The applicable statute of limitations prescribes one year as the period within which "an action . . . for injury to . . . one [person] caused by the wrongful act or neglect of another" may be brought. (Code Civ. Proc., § 340, subd. 3.) In malpractice cases this one year period does not start

to run until the date of discovery of the wrongful act or the date when by the exercise of reasonable diligence the plaintiff should have discovered it. (*Stafford* v. *Shultz*, 42 Cal.2d 767, 776-778 [270 P.2d 1] ; *Costa* v. *Regents of University of California*, 116 Cal.App.2d 445, 454-455 [254 P.2d 85] ; *Bowers* v. *Olch*, 120 Cal.App.2d 108, 117 [260 P.2d 997] ; *Myers* v. *Stevenson*, 125 Cal.App.2d 399 [270 P.2d 885] ; *Hemingway* v. *Waxler*, 128 Cal.App.2d 68 [274 P.2d 699] ; *Wohlgemuth* v. *Meyer*, 139 Cal.App.2d 326, 330-331 [293 P.2d 816].) ▉ In such a case the complaint must state when the discovery was made, the circumstances under which it was made, and facts to show that the plaintiff is not at fault for not having made an earlier discovery, and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry. (*Myers* v. *Stevenson, supra,* 125 Cal.App.2d 399; *Wohlgemuth* v. *Meyer, supra,* 139 Cal.App. 2d 326, 330-331.)

In the instant case plaintiffs alleged the date of discovery (March 23, 1954) and the circumstances under which the discovery was made (operation performed by other physicians). Concerning lack of actual or presumptive knowledge, they allege that certain thyroid treatments negligently administered by Dr. Giordano in 1951 resulted in a disfiguring scar on Mrs. Hurlimann's throat and large amounts of tissue which she later discovered had to be removed, but that plaintiffs continued at various times during the years 1951, 1952 and 1953 to consult with the doctor "in reference to general checkup, and although advised by said decedent on those visits that plaintiff Helen Hurlimann had a tonsil condition that would require a tonsillectomy, were never advised that there was any danger connected with the white scar left by the radium exposure, and were lulled into a false sense of security by said decedent's representations to them that the scar on the throat of plaintiff Helen Hurlimann was insignificant and harmless and that its removal would be a routine and simple matter to be done when a tonsillectomy would be performed on said plaintiff. Said plaintiff[s] relied on these representations, believing the scar to be superficial and harmless, until an operation which was performed upon plaintiff Helen Hurlimann, on the 23rd day of March, 1954, by other physicians."

This is a meager statement of the circumstances under which the discovery was made and of the asserted lack of

earlier actual or presumptive notice. In such a case as this the plaintiff must narrate the circumstances concerning his delayed discovery in such detail "that the court may determine whether the discovery . . . was within the time alleged . . ." (*Lady Washington Consol. Co.* v. *Wood,* 113 Cal. 482, 487 [45 P. 809] ; cited with approval in *Original Min. & Mill. Co.* v. *Casad,* 210 Cal. 71, 74-75 [290 P. 456].) However, as stated in *Myers* v. *Stevenson, supra,* 125 Cal. App.2d 399, 402, likewise in our case, "If the allegations might be more explicit as to the reason for not discovering the cause of action sooner, it does not appear that they could not be amended to meet any such objection and this being so the sustaining of the demurrer without leave to amend would be reversible error, if it appears that a cause of action could be stated. (Code Civ. Proc., § 472c; *Wennerholm* v. *Stanford Univ. Sch. of Med.,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358] ; *Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34 [172 P.2d 867].)"

This presents for consideration the question whether certain provisions of section 707 of the Probate Code* operate as a bar to this action even if the statute of limitations has not commenced to run. Section 707 declares that "all claims for damages for physical injuries . . . must be filed or presented within the time limited in the notice or as extended by the provisions of section 702 of this code; and any claim not so filed or presented is barred forever unless it is made to appear . . . that the claimant had not received notice by reason of being out of the State . . ." (There is no allegation that either of the plaintiffs herein was at any time out of the state.)

If literally construed, this "all claims" provision of section 707 would include the cause of action of an injured person who has not yet discovered the wrong. It is argued that such an interpretation is so inconsistent with the policy of not having the statute of limitations run until discovery, the Legislature could not have intended thus to terminate the right of action before discovery. It has further been suggested that a literal construction and application of this

---

*Section 716 of the same code declares that "No holder of a claim against an estate shall maintain an action thereon unless the claim is first filed with the clerk or presented to the executor or the administrator," save for a single exception not here involved.

The word "claim" as used in section 716 has the same meaning as in section 707. (*National Auto. & Cas. Ins. Co.* v. *Ainge,* 34 Cal.2d 806, 808-810 [215 P.2d 13].)

"all claims" provision would be equally inconsistent with the main purpose of the very act which amended section 707 (Stats. 1949, ch. 1380, p. 2400), the survival of tort actions, including personal injury actions.

Such a purpose is expressed in the title of the 1949 act and in section 956 which it added to the Civil Code, the latter declaring that a "thing in action arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action. . . ." (Stats. 1949, ch. 1380, p. 2400.)

If this were the only legislative purpose and policy involved, we would be confronted with the problem of reconciling section 707 with section 956, for section 707 does seem to undo (in the type of case here under consideration) what section 956 seeks to accomplish. In such a situation, the cardinal rule of construction would require such a reconciliation if at all possible. That rule "must accord to language the legislative intention; that such legislative intention controls, indeed, it is the law itself; that where the Legislature has clearly set forth the purpose of the acts and has enacted a plan or design for its accomplishment, the implemental portions of the act must be construed so as to achieve the objective, . . ." (*California Toll Bridge Authority* v. *Kuchel*, 40 Cal.2d 43, 53 [251 P.2d 4].)

But the "all claims" provision of section 707 is not a mere "implementation" of the intent expressed in section 956. It implements the long established policy of requiring prompt presentation of claims against the estate of a decedent. When a man dies the state intervenes and administers the estate through its probate court and an executor or administrator for the protection of the creditors and the heirs. (See *Verdier* v. *Roach*, 96 Cal. 467 [31 P. 554], and *National Auto. & Cas. Ins. Co.* v. *Ainge, supra,* 34 Cal.2d 806, 808-809, reviewing the history of section 707 and its predecessor statutes; also *Fontana Land Co.* v. *Laughlin,* 199 Cal. 625, 636 [250 P. 669, 48 A.L.R. 1308], concerning "the duty of probate courts to guard the interests of heirs and creditors.")

Accordingly, the Legislature, when it provided for the survival of tort actions, quite naturally implemented this

policy of the probate statutes by requiring the timely filing or presentation of claims "for damages for physical injuries" (§ 707) and did so by applying the traditional formula, "within six months after the first publication of the notice" to creditors (Prob. Code, § 700). It would be pure speculation to undertake to say that the Legislature did not have its attention directed to the injured person who has not yet discovered he has a cause of action and that, if it had, it would have prescribed a different period of time and what period of time it would in that case have prescribed. Incidentally, in respect to a claimant who because of absence from the state has not received notice of the time limited, the Legislature extends the time for the presentation of his claim until the rendition of a decree of distribution (§ 707), which could occur and not infrequently does occur soon after the expiration of the traditional six months' period. In other words, by its 1949 amendment of section 707, the Legislature has prescribed the traditional six months' period for the type of case here involved, and we are aware of no constitutional inhibition against its so prescribing. We do not deem the situation here presented truly analogous to that which obtains when the Legislature shortens a statutory period of limitation and retroactive application of the abbreviated period would unduly curtail the bringing of an action against which the statute has commenced to run, in which case the litigant is given a reasonable time within which to bring his action (see cases collected in 11 Cal.Jur.2d 652, § 229, and 16 Cal.Jur. 398, § 9).

Plaintiff's remaining argument is to the effect that the decedent's alleged conduct, in view of his fiduciary relationship, lulled them into a false sense of security and should operate as an estoppel to the pleading of the bar of section 340, subdivision 3, or of section 707. However that might be, were he still living, we do not see how it can estop the executor who is an officer of the probate court charged with the administration of the estate and the protection of creditors and heirs. It is well established that an executor has no power to waive due presentation of a claim which the statute declares must be presented (*Harp* v. *Calahan*, 46 Cal. 222, 233; *Estate of Erwin*, 117 Cal.App.2d 203 [255 P.2d 97]); nor has he power to waive the bar of the statute of limitations (*Estate of Lucas*, 23 Cal.2d 454, 466 [144 P.2d 340], and cases there cited). The rationale of these cases would

seem to rule out any basis for estoppel of the executor predicated upon the conduct of the decedent.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 18, 1956. Traynor, J., was of the opinion that the petition should be granted.