[L. A. No. 24742. In Bank. Feb. 20, 1959.]

SELECT BASE MATERIALS, INC. (a Corporation), Appellant, v. BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA, Respondent.

642

William J. Clark for Appellant.

Charles C. Stratton, Sterling S. Clayton, Trippet, Yoakum, Stearns & Ballantyne, Oscar A. Trippet and David Freeman as Amici Curiae on behalf of Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Dan Kaufmann, Jay L. Shavelson and James C. Maupin, Deputy Attorneys General, for Respondent.

SPENCE, J.—Plaintiff sought to recover certain sales taxes paid under protest. The disputed taxes were based upon transportation charges made by plaintiff for materials delivered to its customers during the period from May 1, 1951, through September 30, 1953. Plaintiff claimed that by virtue of its method of doing business, the transportation costs were

incurred *after* the sale and therefore should have been excluded from the computation of its gross receipts. The court ruled otherwise and accordingly entered judgment denying plaintiff any relief. We have concluded that such judgment must be affirmed.

During the period involved plaintiff was in the business of mining and selling decomposed granite from its lands. It did not stockpile any material but upon receiving an order, it mined the granite and placed it directly on trucks to be hauled to the place designated by the buyer. Plaintiff did not own any trucks but contracted with independent truckers. The hauling charges, which plaintiff paid, were those fixed by the Public Utilities Commission according to the delivery zone.

Practically all orders received by plaintiff were made by telephone. When a new customer called, he would ask the price and then after he gave the address for delivery of the materials, he would be quoted the "price of the granite plus the haul." With an old customer, there would be no discussion as to price but the order would be taken with notation of the place for delivery. No statement was made to any customer concerning who would do the hauling. The trucker's delivery ticket, a form prepared by plaintiff, contained the following notation: "Our drivers will make every effort to place materials where customer designates, but the shipper assumes no responsibility for damages inside the curb line."

On its books plaintiff always segregated the charges so as to state separately the price for the material, the sales tax thereon, and the transportation cost. However, the invoices sent to the customers varied: some set forth the transportation cost as a separate item while others lumped the material price and hauling charge together, with the "tax on material only" shown separately. The transportation cost would be a matter of computation on the latter form. Plaintiff's office manager testified that the customers' sole concern was the cost of the load at the place designated for delivery, not "the cost of the freight [separate] from the cost of the granite." Defendant called several of plaintiff's customers as witnesses, all of whom agreed that the "delivered price" was the basis of their orders of plaintiff's materials.

The court found that all transportation charges made by plaintiff to its customers during the period involved were for transportation of materials prior to sale; that no sale took place until delivery to the customers; and that plaintiff's bills to its customers included a charge for both the materials

and transportation. From these findings the court concluded that the transportation charges were part of the sales price of the property sold by plaintiff (Rev. & Tax. Code, § 6011) and were properly includable within plaintiff's gross receipts for sales tax purposes. (Rev. & Tax. Code, § 6012.) Plaintiff contends that the evidence does not support the findings.

Section 6051 of the Revenue and Taxation Code imposes a tax upon retailers for the privilege of selling tangible personal property at retail. The tax is measured by the retailer's gross receipts from sales. Section 6012 defines ''gross receipts'' as the total amount for which tangible personal property is sold, including the cost of transportation of property *prior to its sale to the purchaser* but excluding ''transportation charges separately stated'' if the transportation occurs *after the sale of the property is made to the purchaser.* Section 6011 similarly defines ''sales price'' as the total amount for which tangible personal property is sold, with like distinction for inclusion and exclusion of the transportation charges as part of the sale. Accordingly, the principal question here is whether the transportation occurred before or after the sale.

Under the Uniform Sales Act (Civ. Code, §§ 1721-1800), a sale is ''an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price.'' (Civ. Code, § 1721.) Defendant maintains that since plaintiff's agreements with its customers cast upon it the obligation to deliver the granite to the points designated by the customers, the intent of the parties as to the time and place where title should pass is governed by section 1739, rule 5. It provides: ''If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reach the place agreed upon.'' Plaintiff, on the other hand, maintains that the question of its tax liability on the transportation charges is governed by subdivision (b) of section 6006 of the Sales Tax Act. (Rev. & Tax. Code, §§ 6001-6095.) Under section 6006, a sale ''means and includes: (a) Any transfer of title or possession . . . of tangible personal property for a consideration; (b) Any withdrawal . . . of tangible personal property from the place where it is located for delivery to a point in this State for the purpose of the transfer of title or possession . . . of the property for a consideration. . . .'' Plaintiff contends that all the transactions here in question fell within

subdivision (b) of the above section, which was effective during the period here in question, excepting the last 15 days thereof. The trial court held this subdivision (b) to be inapplicable, and apparently resolved the parties' basic dispute under the Uniform Sales Act as coordinated with subdivision (a) of section 6006 and section 6012 of the Revenue and Taxation Code. Accordingly, it held that the evidence showed that the parties intended, as defendant argued, that the transfer of title to the granite should pass when it reached the place of delivery, rather than, as plaintiff argued, when it was placed upon the trucks of the independent carriers. The transportation charges therefore occurred prior to the sale and their inclusion in plaintiff's gross receipts for sales tax purposes was proper.

 The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*California Toll Bridge Authority* v. *Kuchel,* 40 Cal.2d 43, 53 [251 P.2d 4]; *County of Alameda* v. *Kuchel,* 32 Cal.2d 193, 199 [195 P.2d 17]; *Dickey* v. *Raisin Proration Zone No. 1,* 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324]; 82 C.J.S., Statutes, § 321, p. 560; 45 Cal.Jur.2d, Statutes, § 126, p. 634.) Moreover, "every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." (*Stafford* v. *Los Angeles etc. Retirement Board,* 42 Cal.2d 795, 799 [270 P.2d 12].) If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. (*People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, 638 [268 P.2d 723].) Such purpose will not be sacrificed to a literal construction of any part of the act. (*People* v. *Ventura Refining Co.,* 204 Cal. 286, 292 [268 P. 347, 283 P. 60]; *H. S. Mann Corp.* v. *Moody,* 144 Cal.App.2d 310, 320 [301 P.2d 28]; 45 Cal.Jur.2d Statutes, § 130, p. 637.) Applying these principles, it must be concluded that plaintiff cannot prevail here.

 Subdivision (a) of section 6006 of the Revenue and Taxation Code sets forth the principal definition of "sale" as "any transfer of title . . . of tangible personal property . . . for a consideration." It coincides with the common-law definition of a "sale" and is substantially the same as that used in the Uniform Sales Act. (Civ. Code, § 1721; 77 C.J.S., Sales, § 4, pp. 587-588.) It is reasonable to assume that the Legislature intended the basic definition of the word "sale"

to govern its interpretation in connection with "gross receipts" for computation of the sales tax. (Rev. & Tax. Code, § 6012.) ■ As a further refinement for purposes of the Sales Tax Act, subdivision (b) of section 6006 declared a taxable event to take place when there is any "withdrawal . . . of tangible personal property from the place where it is located for delivery to a point in this State for the purpose of the transfer of title . . . of the property for a consideration." This provision was obviously engrafted into the Sales Tax Act in 1939 to enable the state to tax retail transactions that would not otherwise be taxable, as where goods were shipped from one point in this state for sale within territory which had been ceded by the state to the United States without reservation of the right of taxation, such as the military reservation known as "The Presidio" in San Francisco. (See *Standard Oil Co.* v. *California*, 291 U.S. 242 [54 S.Ct. 381, 78 L.Ed. 775], decided in 1935.) Manifestly, there would be no necessity for such provision where delivery as well as withdrawal of the goods takes place within the state's boundaries, for title would pass and the sale would be determinable under subdivision (a). Subdivision (b), making the act of withdrawal "in this State" a taxable event, remained in effect until September 15, 1953, although by federal statute (4 U.S.C.A., § 105) the state was in 1940 granted authority to levy sales taxes in any federal area. While there was an extended delay in the elimination of the subdivision as part of the Sales Tax Act, its continuance as part of the law did no harm and the Legislature may have postponed its removal to cover the situation in the event that the cited federal legislation did not continue in effect. ■ At any rate, when subdivision (b) was repealed in 1953, subdivision (a) was left unchanged as expressing the basic definition of a "sale."

■ Plaintiff argues that the language of subdivision (b) is clear and unambiguous so as not to permit the application of rules of construction for its interpretation. But section 6006, as it read at the time here involved, had seven subdivisions, with subdivision (a) containing the basic definition of "sale" and the succeeding six, (b) to (g), setting forth other specific transactions which would be taxable. These subdivisions must be coordinated and harmonized with section 6012 for the purpose of application of the Sales Tax Act. ■ If, as plaintiff contends, a taxable sale occurred the moment the granite was removed from the mine, constituting a "withdrawal" under subdivision (b), then all transporta-

tion must occur after the sale and sections 6011 and 6012 of the Revenue and Taxation Code, distinguishing between transportation costs before and after the sale for purposes of computing the sales tax, would become meaningless. It is not to be presumed that the Legislature used language in a sense which would render nugatory important provisions of the statute. (*Clements* v. *T. R. Bechtel Co.*, 43 Cal.2d 227, 233 [273 P.2d 5].) Rather by confining subdivision (b) to its limited purpose as declaring a taxable event under prescribed conditions relating to the federal law, each part of the statute is given meaning.

 Since subdivision (a) thus becomes the applicable part of section 6006 in determining when the sale occurred in relation to the transfer of title to the goods, defendant properly relies on the record to sustain inclusion of the transportation charges in computing plaintiff's sales taxes. As appears from the evidence, plaintiff's customers were only interested in the "delivered price" of the granite, and plaintiff's agreements required it to deliver the granite to the places designated. The customers had no control over the independent truckers chosen by plaintiff for the hauling, and the truckers were paid by plaintiff. The fact that plaintiff elected to discharge its responsibility for delivery by the use of independent truckers and paid them according to the rates fixed by the Public Utilities Commission is immaterial. In view of the evidence reflecting the parties' intention that title to the granite would not pass until delivery, we conclude that the trial court properly held that the transportation charges preceded the transfer of title and were therefore correctly included as part of plaintiff's "gross receipts" for computation of the sales tax.

 In the administration of the Sales Tax Act, defendant has consistently taken the position that the transfer of title is the proper test for application of section 6012 of the Revenue and Taxation Code, and that the intent of the parties to the sale controls. (Sales and Use Tax Ruling No. 58, Cal. Admin. Code, tit. 18, § 2028.) While this contemporaneous administrative construction is not necessarily controlling, it "is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." (*Coca-Cola Co.* v. *State Board of Equalization*, 25 Cal.2d 918, 921 [156 P.2d 1]; see also *Richfield Oil Corp.* v. *Crawford*, 39 Cal.2d 729, 736 [249 P.2d 600].) The same reasoning was employed in *O'Kelley Eccles Co.* v. *State*,

160 Cal.App.2d 60, 63-64 [324 P.2d 683], where the propriety of including delivery charges in the computation of the seller's gross receipts from sales for purposes of the sales tax was determined on the basis of "when title passed" in the sales involved (p. 63), and the "intent of the parties" (p. 64) was held to be governed by rule 5 of section 1739 of the Uniform Sales Act. (See also *Meyer* v. *State Board of Equalization*, 42 Cal.2d 376, 382 [267 P.2d 257].)

Nor does it avail plaintiff to argue that double taxation will result if it is held liable for the transportation charges as part of its gross receipts from sales and the independent truckers employed by it are likewise required to include such charges in computing their gross receipts from trucking operations. (Rev. & Tax. Code, § 9606.) The sales tax and the trucking tax are excise and not property taxes. Each is a well-defined privilege tax: one for the privilege of selling tangible personal property at retail and the other for the privilege of using the public highways for hauling services. Though each tax is measured by gross receipts, separate and distinct privileges are involved. The imposition of such taxes therefore presents no problem of double taxation. (*Cf. Douglas Aircraft Co., Inc.* v. *Johnson*, 13 Cal.2d 545, 549 [90 P.2d 572].)

In view of the above conclusions, it becomes unnecessary to determine the parties' further dispute as to whether the transportation charges met the statutory requirement of separate statement in relation to the computation of gross receipts from sales. (Rev. & Tax. Code, § 6012.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Schauer, J., concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons stated by Mr. Justice Nourse in the opinion prepared by him for the District Court of Appeal in *Select Base Materials* v. *Board of Equalization* (Cal.App.), 329 P.2d 65.

Appellant's petition for a rehearing was denied March 18, 1959. McComb, J., was of the opinion that the petition should be granted.