[Civ. No. 21941. Third Dist. May 31, 1983.]

RAYMOND NUNEZ, as Administrator, etc., Petitioner, v.
THE SUPERIOR COURT OF PLACER COUNTY, Respondent;
AARON HOWELL et al., Minors, etc., Real Parties in Interest.

## COUNSEL

Memering & DeMers, James A. Honer and Michael F. Geary for Petitioner.

No appearance for Respondent.

Klein & deVries and Ronald A. Arendt for Real Parties in Interest.

## OPINION

**BLEASE, J.**—Real parties in interest are the heirs of Sylvia Montoya and are plaintiffs in a wrongful death action brought against the estate of Sylvia's deceased spouse, Jerry Montoya. Their complaint alleged he negligently piloted a light aircraft causing it to crash, resulting in his death followed by Sylvia's death. Petitioner answered, asserting the action was barred for failure to file a claim with the estate. Petitioner's motion on this ground for summary judgment, which we treat as a motion for judgment on the pleadings,[1] was

---

[1]The motion is properly viewed as a motion for judgment on the pleadings. (See *Halbert* v. *Berlinger* (1954) 127 Cal.App.2d 6, 14 [273 P.2d 274].)

denied. We issued an alternative writ to consider whether the requirement a claim be filed with the estate turns on the happenstance of the order of the spouses' deaths. We will conclude the claim must be filed with the estate as a prerequisite to maintenance of the action.

## Facts

The pertinent allegations are few. The aircraft crashed on May 25, 1980. Real parties allege Jerry Montoya died a short time after the accident and Sylvia Montoya died three days later. On May 27, 1981, real parties filed their first amended complaint seeking recovery from the estate of Jerry Montoya. They did not file a probate claim with the estate.

## Discussion

At issue is whether a wrongful death claim (cause of action) against an estate, arising after the death of the testator, is a "claim" which must be timely filed with the estate pursuant to Probate Code section 707 prior to maintenance of the action.[2] Section 707 requires "*all claims* for damages for injuries to or death of a person" to be so filed.[3] Real parties rely upon *Pitzer* v. *Smith* (1981) 123 Cal.App.3d 73 [176 Cal.Rptr. 407], which holds that claims for tort liabilities arising *after* the death of the decedent are not "claims" subject to the claims statute. For reasons which appear, we disagree with *Pitzer*.

The *Pitzer* holding is bottomed upon a canon of statutory construction that " 'where legislation is framed in the language of an earlier enactment on the same or an analogous subject which has been judicially construed, there is a

---

[2]All statutory references are to the Probate Code unless otherwise noted.

[3]"Except as provided in subdivision (b) or Section 707.5 or Section 720, all claims arising upon contract, whether they are due, not due, or contingent, and all claims for funeral expenses and all claims for damages for injuries to or death of a person or injury to property and all claims against the executor or administrator of any testator or intestate who in his lifetime has wasted, destroyed, taken or carried away or converted to his own use, the property of another person or committed any trespass on the real property of another person, must be filed or presented within the time limited in the notice or as extended by the provisions of Section 709 of this code. Any claim not so filed or presented is barred forever, unless it is made to appear by the affidavit of the claimant to the satisfaction of the court that (1) the claimant had not received notice, by reason of being out of the state, or (2) the claimant had in good faith filed a claim in another proceeding for the same decedent which has not been consolidated with the present proceeding, and in which letters had not been issued. In either event the claim may be filed or presented at any time within one year after the expiration of such prescribed period and before petition for final distribution has been filed; provided, neither the filing or presentation of such claim nor its later establishment, in whole or in part, shall make property distributed pursuant to court order or any payments properly made before filing or presentation of such claim subject to the claim. The clerk must enter in the register every claim filed, giving the name of the claimant, the amount and character of the claim, the rate of interest, if any, and the date of filing." (Prob. Code, § 707, subd. (a).)

very strong presumption of intent to adopt the construction as well as the language of the prior enactment . . . [Citations].'" (*Pitzer, supra,* 123 Cal.App.3d at p. 78.) We find the canon inapplicable for two reasons, one of which we footnote.[4]

[4]The canon of construction utilized by *Pitzer* has application only where the language to be construed "is framed in the language of an earlier enactment on the same or an analogous subject which has been judicially construed." It presupposes an identity of language between earlier and later enactments and a definitive construction of the earlier language.

A paradigm case for application of the canon is provided by *Union Oil Assoc.* v. *Johnson* (1935) 2 Cal.2d 727 [43 P.2d 291, 98 A.L.R. 499], upon which *Pitzer* relied. It involved interpretation of the language of a state statute, enacted to establish a method of taxation complying with a permissive federal tax statute. The language to be construed was borrowed from the federal legislation. In that context there was a compelling inference "the adoption of the words of the federal enactment evinces an intent to adopt the federal construction thereof . . . ." (*Id.,* at p. 735.) *Union Oil* provides no support for the *Pitzer* holding.

As explained above, *Pitzer* did not reach the claims language of section 707. But it did interpret the identical language in section 720, which was taken from 707. (See fn. 5.) Since 720 is derived from 707 the defects in the *Pitzer* reasoning are applicable to both sections. The 1979 amendment to section 707 did not borrow words from an earlier enactment. It *added* new words, i.e. it added tort claims to the probate claims statute, where previously only contract claims were covered. *Pitzer* ignores this fact. Instead it singles out "claims" as the sole word to be construed, thereby severing it from the types of claims made subject to the claims statute. This stratagem has the natural result of producing dicta, since the claims statute never applied simply to "claims."

This consequence is revealed in the dictum, relied upon by *Pitzer*, obtained from the early case of *Miller & Lux, Inc.* v. *Katz* (1909) 10 Cal.App. 576, 578 [102 P. 946]: "[T]he liability here arose after the testator's death, and therefore did not constitute a claim against the estate which was required to be presented for allowance." *Katz* did not set forth the language of the applicable claims statute, but it was undoubtedly the claims statute of 1873-1874 which was limited to "a claim arising upon a contract." (Code Civ. Proc., § 181; Stats. 1873-1874, ch. 383, p. 364.) As *Katz* expressly recognized, the stockholder's liability at issue arose not from any contract but was inherent in the property itself. Accordingly, *Katz* did not construe the claims statute. Similarly, *Swanson* v. *Siem* (1932) 124 Cal.App. 519 [12 P.2d 1053], also cited by *Pitzer,* relies on the same dictum (passed on unacknowledged through Corpus Juris, *id.,* at pp. 526-527). *Swanson,* like *Katz,* did not involve a contract action subject to the claims statute.

It is worth noting that *Katz* relied for its dictum solely upon *People* v. *Olvera* (1872) 43 Cal. 492, and *Hancock* v. *Whittemore* (1875) 50 Cal. 522. But *Hancock,* like *Katz,* did not involve a contract action subject to the claims statute. And *Olvera,* upon which *Hancock* in turn relied, is best read, not as support for the *Katz* dictum, but for the simple assertion that the claim it reviewed, i.e. for taxes assessed against the estate during the pendency of administration of the estate, was not the *kind* of claim made subject to the act.

The dictum in *Katz* is thus traceable to a simple error in categorizing claims and rests upon no statutory analysis worthy of the name. The *Katz* line purports to construe the word claim based upon the timing of the point of accrual, but as revealed, the construction is really based upon the nature of the claim in issue. The disembodied notion of "claim," upon which *Pitzer* expends its interpretive capital, is thus not an "earlier enactment" to which the canon of construction should be applied. It is but a lifeless abstraction. Any thread of inference the Legislature intended to embrace it as a source of meaning for its 1949 enactment is gossamer in quality.

It should be noted, though, the "claims" dictum has been much repeated. *Katz* was the source of a further dictum in *Sperry* v. *Tammany* (1951) 106 Cal.App.2d 694, 698 [235 P.2d 847]; *Sperry* was repeated in *Newberger* v. *Rifkind* (1972) 28 Cal.App.3d 1070 [104 Cal.Rptr. 663, 57 A.L.R.3d 1232]. Neither of these cases involved the *kinds* of claims made subject to section 707.

Curiously, *Pitzer* rejected *as dictum* the only pre-1949 case expressly considering a tort claim

The presumption relied upon in *Pitzer* applies only when the question of meaning cannot be resolved by examination of the enactment to be construed. "One of the common techniques of statutory construction, *besides being always a starting point,* is to read and examine the text of the act and draw inferences concerning meaning from its composition and structure." (2A Sutherland, Statutory Construction (4th ed. 1973) § 47.01, p. 70; italics added.) We start at the starting point, which, as appears, is also the ending point.

 *Pitzer* never got directly to the meaning of section 707 because it did not read it. It got no further than section 720, which provides an extension of the filing requirements of section 707 for tort actions which are not "pending" at the time of the testator's death. But section 720 got its claims language from section 707.[5] The language to be interpreted, therefore, is the phrase "all claims for damages for injuries to or death of a person" in section 707. That language, then limited to physical injuries,[6] was *added* by amendment to the claims statute in 1949 as part of a comprehensive measure providing for survival of tort actions. (Stats. 1949, ch. 1380, § 6, p. 2402; see *Hurlimann* v. *Bank of America* (1956) 141 Cal.App.2d 801, 805-806 [297 P.2d 682]; *Hoertkorn, supra*; see also Livingston, *Survival of Tort Actions: A Proposal for California Legislation* (1949) 37 Cal.L.Rev. 63, 77.) As appears, the 1949 enactment conclusively determines the meaning of "all claims" in section 707.

As recited, the 1949 amendment to section 707 was part of a comprehensive measure concerning the survival of tort actions. The draftsman of the measure explained the relationship of the survivorship provisions to the amended probate claims provisions as follows: "Although the task of the draftsmen of survival statutes does not include revision of probate law, it seemed logical and reasonable to provide for the filing of claims in tort cases as well as in contract cases." (Livingston, *supra,* 37 Cal.L.Rev., at p. 77.) Thus the claims provisions were amended to dovetail with the survival rules. The "all claims" for injury or death language of section 707 was added; at the same time Probate Code section 573 was amended to authorize an action "*against*" an estate "upon any liability for physical injury [or] death . . . in *all cases* in which the cause of action *whether arising before or after death* is one which would not abate upon the

---

and which said a tort claim arising after death *was* subject to the claims statute. (See *Eustace* v. *Jahns* (1869) 38 Cal. 3, 23-24.) *Pitzer* also viewed as dictum, the holding in *Estate of Hoertkorn* (1979) 88 Cal.App.3d 461 [151 Cal.Rptr. 806] that a cause of action for fraud accruing, by discovery, *after* death of the tortfeasor was within section 720.

[5]Section 720 was enacted in 1969. (Stats. 1969, ch. 959, § 2, p. 1907.) In the same legislation, section 707 was amended to cross-reference section 720 *as an exception.* (Stats. 1969, ch. 959, §§ 1, 2, pp. 1906-1907.) The sections should be read in pari materia. (*Estate of Hoertkorn, supra,* 88 Cal.App.3d at p. 466.)

[6]The word "physical" was deleted in 1961 and "of a person" was added. (Stats. 1961, ch. 657, § 6, p. 1869; see *Estate of Hoertkorn, supra,* at p. 465.)

death of [the] testator . . . ." (Stats. 1949, ch. 1380, § 5, p. 2402; italics added.) With respect to wrongful death actions, Code of Civil Procedure section 377 was simultaneously amended to authorize maintenance of an action "in the case of the death [of the] wrongdoer, against the personal representative of such wrongdoer, *whether the wrongdoer dies before or after the death of the person injured.*" (Stats. 1949, ch. 1380, § 4, p. 2401; italics added.) The inference simply to be drawn from this semantic matrix is that "all claims" for injury or death in section 707 refers to the tort claims expressly contemplated by section 573 and Code of Civil Procedure section 377, including, as here, a wrongful death claim arising *after* the death of the tortfeasor.

That was the conclusion reached in *Hurlimann, supra,* in which a personal injury claim for malpractice against the testator accrued, by virtue of its late discovery, well after the testator's death. The court held the claims filing provisions of section 707 operated to bar maintenance of the action, notwithstanding the claim *accrued after* expiration of the filing period. The court justified this result by "the long established policy of requiring prompt presentation of claims against the estate of a decedent." (*Hurlimann, supra,* 141 Cal.App.2d at p. 805.) The later adoption of section 720 was no doubt directed to alleviation of *Hurlimann*'s harsh result. (See *Estate of Hoertkorn, supra,* 88 Cal.App.3d at p. 466.)

Inclusion of postdeath tort claims within the claims statute carries out a purpose "intended to insure that the executor or administrator of an estate will be notified within a reasonable period of time of all claims so that the estate may be expeditiously settled and distributed to the legatees or heirs. [Citations.] In addition, [the claims requirement] provides an opportunity for amicable disposition of a claim prior to the commencement of any action and thus protects the estate from needless litigation. [Citations.]" (*Satterfield* v. *Garmire* (1967) 65 Cal.2d 638, 641-642 [56 Cal.Rptr. 102, 422 P.2d 990]; *Hurlimann, supra,* 141 Cal.App.2d at p. 806.)

We conceive of no reason to exempt claims arising after death from these purposes. Whether an action arises before or after the death of the testator has no discernable effect upon the utility of presuit settlement opportunities. A contrary conclusion results in wholly capricious distinctions, turning, for example, on the happenstance of discovery of a malpractice claim (*Hurlimann, supra,*) or a fraud claim (*Hoertkorn*), or here, the fortuitous sequence of the Montoyas' deaths.

Our holding works no hardship where the cause of action arises after the normal probate claim filing period of section 707 has elapsed. Section 720 provides for relief within one year of accrual of the cause of action. To avoid any possible consequence of detrimental reliance upon *Pitzer,* the holding in this case is

prospective only. Unfortunately, the real parties in interest whose cause of action, we note, arose prior to *Pitzer*, made no attempt to comply with this remedial provision.[7]

## *Disposition*

A peremptory writ of mandate shall issue ordering the trial court to vacate its order denying petitioner's motion for (summary) judgment on the pleadings. Petitioner shall recover its costs. The alternative writ, having served its purpose, is discharged.

Evans, Acting P. J., and Carr, J., concurred.

On June 29, 1983, the opinion and judgment were modified to read as printed above.

---

[7]We intimate no opinion whether real parties' complaint may be amended to come within section 721.