[S. F. No. 17708.  In Bank.  July 2, 1948.]

COUNTY OF ALAMEDA, Petitioner, v. THOMAS H. KUCHEL, as State Controller, Respondent.

J. F. Coakley, District Attorney, R. Robert Hunter, As-

sistant District Attorney, and Archie A. Smith, Deputy District Attorney, for Petitioner.

Fred N. Howser, Attorney General, and Robert E. Reed, Deputy Attorney General, for Respondent.

SHENK, J.—Petitioner county of Alameda seeks the writ of mandate to compel the Controller of the State of California to draw his warrant in favor of petitioner for an amount claimed to be due it under the provisions of section 779 of the Vehicle Code as it existed prior to its repeal in 1947 by section 18 of the Collier-Burns Highway Act. (Stats. 1947 (1st Ex. Sess.), pp. 3788-3806.)

The moneys thus claimed were paid into the Motor Vehicle Fund of the state treasury, for the period of July 1, 1947, to January 1, 1948. The amount sought is a sum "equal to that proportion of thirty-one and three-fourths percent of the moneys received and reported as registration and weight fees and penalties thereon and fees for special plates . . . which the number of fee-paid vehicles registered in the county of Alameda . . . bears to the total number of fee-paid vehicles registered in the state of California."

The Collier-Burns Highway Act, herein referred to as the act, provides for a comprehensive system of public streets and highways in this state, and for the acquisition and distribution of funds for its maintenance. As hereinafter noted, the act contemplates several changes in the existing law relating to the collection and distribution of moneys paid into the Motor Vehicle Fund in connection with the registration and operation of motor vehicles on the streets and highways. Prior to the repeal of section 779 of the Vehicle Code, which contained the method of distribution of these funds, that statute provided:

"Thirty-one and three-fourths per cent (31¾%) of the moneys received and reported as registration and weight fees and penalties thereon and fees for special plates in the Motor Vehicle Fund is hereby appropriated and shall be paid to the counties of this State and the State Controller shall in the months of February and August of each year draw his warrants upon said Motor Vehicle Fund in favor of the county treasurer of each county for the amount to which each said county is entitled hereunder. Said payments shall be made to the counties in proportion to the number

of fee-paid vehicles registered in such counties as determined by the places of residence of the owners to whom the registration cards are issued." (Stats. 1945, p. 1967.)

The act also makes provision for an increase in the amount of vehicle registration and weight fees, which are payable to the Motor Vehicle Department and carried in the Motor Vehicle Fund. (See §§ 31 and 37 of the act, amending Veh. Code, §§ 370 and 372.)

An increase is also made in distribution and use taxes on motor fuel. (See §§ 29 and 30 of the act, amending Rev. & Tax. Code, §§ 7351 and 8651.)

Several new provisions are added to the Streets and Highways Code (§§ 2000 et seq.) which inaugurates the new "Highway Users Tax Fund" appropriated for the acquisition, improvement, repair, etc., of streets and highways (§§ 2100, 2101). The sum of $5,400,000 from this new fund is to be apportioned annually to the counties—the sum to be increased or decreased each year in the ratio that the total number of registered motor vehicles for the preceding calendar year bears to the total number of motor vehicles registered in 1946 (§ 2104). The apportionment is to be made in January, April, July and October of each year and the sum is to be distributed among the counties in proportion to the number of fee-paid vehicles registered in each county (§§ 2103 and 2110). (See § 1 of the act, adding division 3 to the Streets and Highways Code.)

The act also amends section 781 of the Vehicle Code to provide for the transfer in February of each year from the Motor Vehicle Fund to the "Highway Users Tax Fund" of "an amount equal to" the total moneys remaining at the close of business on December 31 of each year after lawful expenditures and deductions. (§ 27 of the act.)

The dates on which the foregoing provisions became effective are important for an understanding of the question presented, hence certain provisions of the act bearing on that question are here set forth:

Section 38 provides that immediate effect is to be given to certain tax levying provisions, and that the amendments to sections 7351 aid 8651, Revenue and Taxation Code, shall become operative on July 1, 1947. That section also provides that the rate increase as provided by the amendments to sections 370 and 372 of the Vehicle Code are to become

operative on January 1, 1948, and apply with respect to registration of vehicles on and after that date.

Section 39 recites that those sections of the act providing for the new sections added to the Streets and Highways Code (§§ 2100 et seq.) and for the repeal of section 779 of the Vehicle Code, shall become effective on the 91st day following the legislative adjournment (i. e., on September 23, 1947) but that they shall not become completely operative until January 1, 1948, "it being the intention of the Legislature that the changes in allocation of funds, and the purposes for which they may be expended shall take effect as of that date, but that the administrative work necessary to enable such changes to be effected in an orderly manner on said date be performed prior thereto."

Section 40 provides that section 781 of the Vehicle Code (relating to the transfer of moneys from the Motor Vehicle Fund to Highway Users Tax Fund) shall not become "fully operative until January 1, 1948, it being the intention of the Legislature that the changes in depositing and distribution of funds effected by these sections shall apply after January 1, 1948, and that in the meantime these sections must be effective in order to permit such administrative action as will be required to make them fully operative on January 1, 1948."

Section 41 provides in part that "The State Controller shall determine the amount of money received during the period July 1, 1947, to January 1, 1948, as a result of the increases in tax rates made by this act." This provision refers to such increases as are brought about by the amendments to sections 7351 and 8651 of the Revenue and Taxation Code (effecting increases in distribution and use taxes on motor fuel, becoming operative on July 1, 1947) and which are referred to as "new money." The section finally provides that, "The amount of new money so determined by the Controller shall be apportioned by him under the provisions of the law as amended by this act during the month of January, 1948. During said period July 1, 1947, to January 1, 1948, the Controller shall apportion, transfer and distribute moneys received under the tax rates heretofore existing as provided by the law prior to the enactment of this act." As indicated, the statute providing for the apportionment before the enactment of the act was section 779 of the Vehicle Code.

In the period from July 1, 1947, to January 1, 1948, there was paid to the Department of Motor Vehicles some

$1,975,692.30 as registration and weight fees under sections 370 and 372 and as special plate fees under sections 375 of the Vehicle Code (which latter section was not amended by the act). Since the increases under sections 370 and 372 provided by the act were not to become operative until January 1, 1948, the sum mentioned constitutes "old money" paid into the Motor Vehicle Fund under the former law, as distinguished from moneys received under the act in that period solely on account of increases which became operative on July 1, 1947 (such as those provided for in Rev. & Tax. Code, §§ 7351 and 8651). No question is here raised as to the distribution of the "new money" paid in during that period, and it is only petitioner's share of the "old money" which is involved in this proceeding.

Petitioner contends that there was a valid appropriation of these moneys to the counties by virtue of the following language in section 779 prior to its repeal, that "Thirty-one and three-fourths per cent (31¾%) of the moneys received and reported . . . in the Motor Vehicle Fund *is hereby appropriated and shall be paid* to the counties . . . in the months of February and August"; and that it is entitled to a share of this old money under the recitals of section 779 and in accordance with the provisions of section 41 of the act, above set forth.

The controller refuses to pay the sum thus demanded by petitioner, claiming that he has no authority to do so in that there was no fund in existence from which the allocation could be made because the repeal of section 779, requiring the distribution to be made in February, became operative on January 1, 1948. He contends that this view is supported by the provisions of section 39 of the act, hereinbefore quoted, and that thereunder all apportionments of funds are to be governed by the provisions of the new act and not by former section 779 of the Vehicle Code. It is urged that inasmuch as that section has been repealed, there is no provision pursuant to which the allocation may now be made, and that since section 781 of the Vehicle Code was amended to provide for the transfer of moneys from the Motor Vehicle Fund to the Highway Users Tax Fund, there is no money to be allocated except in accordance with the provisions of the act creating that fund and providing for payments from it.

Petitioner recognizes the import of section 39 and other provisions of the act relied on by the controller as indicat-

ing a legislative intent that the new act shall become operative 'on and after January 1, 1948, but contends that the provisions of section 41 of the act operate as a saving clause and require the controller to apportion only the "new money" in accordance with the act, and that the old money is intended to be dispersed in accordance with the previously existing law incorporated in section 779 prior to its repeal.

The contentions of the petitioner should be upheld. ■ It is not necessary that there be an express saving clause in order to save rights under a statute. It is sufficient if an intent to that effect appear by legislative provision at the session of the Legislature effecting the repeal of the statute from which the rights are to be saved. (*Traub* v. *Edwards*, 38 Cal.App.2d 719 [102 P.2d 463]; Black on Interpretation of Laws (2d ed.), pp. 424 and 425.) ■ As noted, section 41 makes a clear distinction between the new money received in the period from July 1, 1947, to January 1, 1948, and "moneys received under the tax rates heretofore existing." It provides that the new money received from the newly imposed rate increases shall be apportioned during the month of January, 1948; but that during the period from July 1, 1947, to January 1, 1948, the controller shall apportion, transfer and distribute moneys received under the tax rates theretofore existing, as provided by the law prior to the enactment of the act. We are satisfied that the construction of section 41 urged by the petitioner accomplishes the result intended by the Legislature. Such intention is indicated in that section by the careful segregation of the new and old moneys, by the different methods there prescribed for their distribution to the counties, and by the specific directive to the controller that during the period mentioned he shall apportion and distribute the moneys *received under the tax rates theretofore existing,* as provided by *the law prior to the enactment of the act.*

It is urged, however, that the wording of the last sentence of section 41 expresses the intention that the controller is to apportion, transfer and distribute the old moneys only between July 1, 1947, and January 1, 1948, and that by the repeal of section 779, effective January 1, 1948, there is no authorization for him to apportion or distribute these moneys in February. The moneys were appropriated under section 779 on a calendar year basis, payable in August and February, and the controller concedes that the time of payment

was deferred to February in order to allow a sufficient time to elapse for the computation and apportionment of the funds. Since there had been a valid appropriation of these moneys to the counties, their right thereto continued irrespective of the time provided for their payment. To accept the contention advanced by the controller would be to ignore the language in section 41 that for the period from July 1, 1947, to January 1, 1948, the moneys received under the tax rates theretofore existing were to be apportioned and distributed ''as provided by the law prior to the enactment of'' the act.

It is a cardinal rule that statutes should be given a reasonable interpretation and in accordance with the apparent purpose and intention of the law makers. Such intention controls if it can be reasonably ascertained from the language used. (*Dickey* v. *Raisin Proration Zone No. 1*, 24 Cal. 2d 796, 802 [151 P.2d 505, 157 A.L.R. 324] ; *Dempsey* v. *Market Street Ry. Co.*, 23 Cal.2d 110, 113 [142 P.2d 929] ; *Burns* v. *Massachusetts Bonding & Ins. Co.*, 62 Cal.App.2d 962, 971 [146 P.2d 29] ; 23 Cal.Jur. pp. 722 et seq.; 10 Cal.Jur. 10-Yr. Supp. pp. 348 et seq.; Civ. Code, § 3542.)

So interpreted we conclude that section 779 of the Vehicle Code is ''the law prior to the enactment of'' the act of 1947 as contemplated by section 41 and that the ''old moneys'' apportioned to the counties by section 779 should be apportioned and distributed to them in accordance with the provisions of that section.

Let the peremptory writ issue as prayed.

Carter, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—My analysis of the provisions of the Collier-Burns Highway Act (Stats. 1947 (1st Ex. Sess.), pp. 3788-3806), leads me to the conclusion that the petitioner is not entitled to the amounts which it claims to be due under the provisions of the Vehicle Code which were repealed when the new tax plan was adopted.

Prior to the enactment of the new legislation, of the three cents per gallon collected by the state as a tax upon the sale of gasoline (Motor Vehicle Fuel License Tax, Rev. & Tax. Code, §§ 8353-8356), the counties received one cent and the cities one-half cent. The income from registration and weight fees (Veh. Code, §§ 776-781) was used in part to pay the expenses of the Department of Motor Vehicles but $31\frac{3}{4}$ per cent

of the amount was allotted to be paid to the counties ratably in February and August of each year. All receipts from the tax on diesel oil, levied at the rate of three cents per gallon (Use Fuel Tax, Rev. & Tax. Code, §§ 9301-9304), were used by the state for the expense of bridge repair.

The 1947 act amended various statutes relating to revenues derived from taxation of motor vehicles and fuel used by them. A detailed plan for carrying them into effect was enacted as sections 38 to 41, inclusive, of the new statute. The general purpose of the Legislature was to increase the rate of levy of each of these taxes and create the ''Highway Users Tax Fund'' into which such revenues shall be paid quarterly. As a procedural change, the act specifies that the apportionment of these revenues to the counties, in accordance with the plan long in effect, shall be made from this fund in quarterly installments, payable during the months of January, April, July and October of each year. (Sts. & Hy. Code, § 2103.)

By another section of the new legislation (Sts. & Hy. Code, § 2104), $5,400,000 is apportioned annually from the new fund among the counties upon the basis of motor vehicle registrations. This amount is substantially the same as the total apportionment made to the counties in 1946 on the basis of a formula prescribed by section 779 of the Vehicle Code (Financial Report of the Joint Committee, 1947, p. 12 [2] [a]). The appropriation shall be increased or decreased each year in accordance with the number of motor vehicles registered in the state as compared to the year 1946.

The new act also allocates the net revenue from the tax of one cent per gallon on gasoline as a continuation of the former apportionment (Sts. & Hy. Code, § 2105). By other provisions, the amount received by the state from the increased levy of three-eighths of one cent per gallon upon the sale of gasoline shall be apportioned among the counties quarterly and used by them only for specified purposes (Sts. & Hy. Code, §§ 2106, 2113-2116).

Unquestionably, the purpose of the 1947 Legislature was to exact a larger amount of taxes from some owners and operators of motor vehicles and make a comprehensive consolidation and unification of the highway revenue and appropriation statutes. Aside from increasing the amount of taxes and a few minor regulatory provisions, the system of allocating to the counties portions of the amount received by the state was unchanged. The state's tax revenues from automobile licenses and the sale

of fuel are to be paid into one fund, and all apportionments made from that fund upon a quarterly basis. But the basic plan of the prior legislation was retained.

In August, 1947, the county of Alameda received its share of the registration and weight fees collected by the state during the first six months of that year. In January, 1948, it received approximately $85,000 as the first quarterly payment under the new system. There was no break in the sequence of payments nor substantial change in the amounts allocated to it by the state; the only difference to the county between the state's distribution of the revenues which are in dispute is in the procedure by which its share of the total net income was distributed to it. However, because of one sentence in section 41, the county contends that it is entitled to an apportionment from the registration fees collected between July 1, 1947, and January 1, 1948. The sum claimed, $39,611, would increase, to that extent, the apportionment to the county of Alameda from registration and weight fees, over either the formula of the repealed section 779 of the Vehicle Code, or that specified in the new statute. Making a similar apportionment to the other counties of the state would require, in the aggregate, about $200,000. But the whole purpose of the new act clearly shows that the Legislature was only substituting a change in the rate and method of apportionment to the counties of a portion of its revenues. To allow the counties to receive from the state additional amounts would constitute a duplication of payment to them for the same period of time and from the same tax funds as they received on January 1, 1948.

The petitioner stresses the language of section 779 of the Vehicle Code to the effect that the moneys to be apportioned are "hereby appropriated and shall be paid to the counties . . . in the months of February and August." It is contended that by the last sentence in section 41, the revenues from registration and weight fees which were collected between July 1, 1947, and January 1, 1948, were immediately "appropriated" by section 779. But under this construction, from what source is the money to come for the first quarterly payment required by the new act?

The act provides that the $5,400,000 "shall be apportioned among the counties from the Highway Users Tax Fund." There is, however, no accompanying appropriation to provide the money for the initial payment in January, 1948.

Certain funds were transferred to the new fund from the Motor Vehicle Fuel Fund (Rev. & Tax. Code, § 8353 [amended 1947]), but such amounts were derived from the gasoline and diesel taxes and fully committed to other specific purposes by the act (Sts. & Hy. Code, § 2111). The only money which was available for transfer into the new Highway Users Tax Fund to cover the January, 1948, warrants drawn on that fund in favor of the counties under section 2104 was the balance of taxes collected under the old law on account of registration and weight fees.

The county of Alameda, however, claims that this money should be paid to the counties in February, 1948, under section 779 of the Vehicle Code which was repealed as of the preceding January 1st. If its position is correct, the cities were entitled to their proportionate share of the tax receipts for the last six months of 1947, and the remainder was payable to the State Highway Fund under the old law. (Veh. Code, § 781.) In that event, on January 1, 1948, there was no money in the new fund against which the counties' warrants of that date were drawn. If the Legislature did not authorize the transfer of the net amount of registration and weight fees collected between July 1, 1947, and January 1, 1948, to the new fund for the purpose of paying the January warrants to the counties, those warrants were without authority of law. Two payments cannot be made for the same purpose from the same revenue source.

A statute must be construed so as to give meaning to every part thereof as well as to the statute as a whole. (*Whitley* v. *Superior Court*, 18 Cal.2d 75 [113 P.2d 449]; *Ahern* v. *Livermore Union High School Dist.*, 208 Cal. 770 [284 P. 1105]; *Crowe* v. *Boyle*, 184 Cal. 117 [193 P. 111]; 23 Cal.Jur. 758.) Considering the legislation in accordance with that rule, section 41 is explained as a whole and in its several parts by the fact that the Legislature was faced with the problem of what to do with the taxes which would accrue during the transitional period provided for by the act. Under the then existing statutes, the semiannual apportionment of the registration and weight fees was due in August, and the third quarterly payment of the gasoline tax apportionment was required to be made in October. There was a special complication in connection with revenue from the gasoline tax for the new amendment was already in effect, and by October the state would have "new money" as well as "old money" in the treasury.

Section 41 was enacted to meet this situation, and as the only payment due during that period under the prior statutes was the distribution to be made in October of the amount received from the gasoline tax, this is the only subject to which the last sentence of that section properly may be said to refer. The "new money" in the gasoline tax revenues was to be apportioned under the new act and held until January, 1948; the "old money" was to be distributed "during the said period . . . as provided by the law prior to enactment of this act."

The section has no application whatever to the registration and weight fees collected and not payable in the last six months of 1947. This construction not only reasonably satisfies the context but is compelled by the theory of continuity which the Legislature attempted to attain between the old statutes and the new act. Petitioner's contention that section 41 was enacted as a saving clause for section 779 cannot be sustained. It is true that if the intent of the Legislature to save rights under a repealed statute can be found from other enactments made at the same session, no express saving clause is needed to preserve those rights. (*Traub* v. *Edwards,* 38 Cal.App.2d 719 [102 P.2d 463] ; Black on Interpretation of Laws (2d ed.), pp. 424-25.) However, in the present legislation the language of section 39 in specifying that the repeal shall "become effective" September 23, 1947 and the new act "become completely operative" January 1, 1948, clearly negates any possible implication of an extension or saving of rights past the latter date. The Legislature was concerned with prescribing what the respondent controller should do *during* the particular period, not with what he should do *subsequently* with the moneys accumulated during the period.

For these reasons, in my opinion, the alternative writ should be dismissed and a peremptory writ denied.

Traynor, J., concurred.

Respondent's petition for a rehearing was denied July 29, 1948. Edmonds, J., and Traynor, J., voted for a rehearing.