[Civ. No. 8844. Fourth Dist., Div. One. Sept. 27, 1968.]

NICOLINA HENDRIKA GERRITSMA, an Incompetent Person, etc., Plaintiff and Appellant, v. PAULA MATHILDA VOGELAAR, Defendant and Respondent.

Patrick S. M. Mitton and Edward L. Lascher for Plaintiff and Appellant.

Gene E. Smith for Defendant and Respondent.

LAZAR, J. pro tem.*—This is an appeal from a judgment of nonsuit against plaintiff and in favor of defendant after the latter's motion therefor upon the completion of plaintiff's presentation of evidence, the trial court sitting without a jury. The motion was made upon the grounds that plaintiff had failed to establish a prima facie case of culpable negligence against defendant and that plaintiff's evidence showed her to be guilty of contributory negligence as a matter of law. Plaintiff urged below and upon this appeal that a prima facie case was made out and also that the case is one to which the "last clear chance" rule applies and that she is entitled to have the case submitted to a jury.

The ruling from which the appeal is taken requires us to review the evidence and case in its aspects most favorable to plaintiff. "It is hardly necessary to say that if inferences can reasonably and fairly be deduced from the evidence which sustain the allegations of the complaint, it is error to grant a motion for a judgment of nonsuit. Negligence may be established by circumstantial evidence, which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts. A plaintiff relying on circumstantial evidence does not have to exclude the possibility of every other reasonable inference possibly deriving from the evidence." (*Jones* v. *Hotchkiss,* 147 Cal.App.2d 197, 201-202 [305 P.2d 129].)

But "A trial court should order a nonsuit if the evidence, giving plaintiff benefit of full credit for all favorable evidence together with the reasonable inferences to be drawn therefrom [citation] is legally insufficient to support a recovery—if viewed in its most favorable aspect it does not establish a prima facie case. [citations.] The fact that the evidence is conflicting does not deprive the trial court of the right to exercise its power [citation] as long as the conflict is not a substantial one. [citation]. . . .

*Assigned by the Chairman of the Judicial Council.

". . . For the evidence to be of sufficient substantiality to make a judgment for nonsuit improper, '[i]t must be such that a reasonably intelligent person can fairly deduce from it that the fact alleged really does exist' [citation]; it ' "must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged." [citation]' [citations].

"Further, a nonsuit is properly granted when evidence developed from the plaintiff's case so conclusively establishes a defense that the court might properly grant a new trial in case of a verdict in his favor upon like evidence. [citations]" (*Doria* v. *International Union*, 196 Cal.App.2d 22, 32, 33 [16 P.2d 429].)

In *Raber* v. *Tumin*, 36 Cal.2d 654, at pp. 656-657 [226 P.2d 574], it is said: "The granting of a motion for nonsuit is warranted '. . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' [citations] 'Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.' [citation] In other words, while in most appeals it is the duty of the reviewing court to indulge every reasonable intendment in favor of sustaining the trial court, substantially the reverse is true when the appeal is from an order of nonsuit. In the latter case the appellate court must view the evidence as though judgment had gone in favor of the appellant, and order a reversal if such a judgment can be sustained."

On June 15, 1966, defendant left her home between 5:30 and 5:45 p.m. to drive to Escondido. Her home was in a rural area about 5 or 6 miles distant, reached by a paved country road, sometimes described as winding and bumpy. She was accompanied by her sister, plaintiff here, her two young children and a dog. They rode in and defendant operated a 1965 Volkswagen Microbus containing three seats and a space in the rear for storage. The vehicle was equipped temporarily with a luggage rack outside of and on top of the roof. The rack was supported on metal stanchions and fastened by screws to the rain gutter. The body of the rack was composed

of horizontal pipes or rails, with metal stanchions to separate and support the top and bottom rails which were about 5 or 6 inches apart. The rack had a plywood floor held off the top of the vehicle by its frame. The rack was 9 x 5 feet in length and breadth. Attached to this rack were steps down the side of the bus to provide access to the rack.

The drive to Escondido was uneventful; made at an average speed of 45 miles per hour. The weather was dry and clear and in the country area the usual afternoon breeze was blowing in a direction opposed to that of defendant's return trip.

In Escondido defendant drove directly to Handyman, a lumber and building material store. She purchased three sheets of plywood the dimensions of which were 8' x 4' x ¼". While defendant was absent paying her bill, the plywood sheets were loaded on the luggage rack by an unidentified person without directions from plaintiff or defendant. The plywood was placed flat on the floor of the luggage rack where it was accommodated without problem because of its smaller dimensions. Loading of the plywood had been accomplished by the time defendant returned to her vehicle. When defendant returned she found plaintiff half way up the ladder to the luggage rack; defendant asked what plaintiff was doing; plaintiff answered that she was going on top to "lay down to hold the plywood sheets down"; defendant asked if plaintiff thought that a good idea; plaintiff answered "Well, yes, as long as you don't go too fast." The plywood was not tied down.

Plaintiff lay flat, face down, on the plywood facing forward, with arms stretched to hold to the side rails of the luggage rack. Defendant started out of the parking area, reached 10 or 15 miles per hour, then stopped and asked plaintiff is she were all right; plaintiff responded "Yes, but don't go too fast!" The windows were open at all times; the radio was on playing "rock and roll" quite loudly; the children and dog were in the rear seats, playing noisily. Once on the return trip, after defendant had made at least two and perhaps more than two stops, she caused her son to lean out the window and ask plaintiff how she was getting along; the answer was "fine." Defendant had already reached speeds of 25 miles per hour. She did not stop to check with plaintiff about the latter's situation at any time after driving 25 miles per hour.

On the route home there were a number of turns, some of them sharp; defendant testified her speed was 25 miles per hour but she slowed down for turns and made some stops;

defendant was conscious of the need to be home as soon as possible. She was late for the usual dinner hour of 6:30 p.m. and her husband would frequently become angry when the regular schedule was not observed.

Defendant maintained a speed of 25 miles per hour and slowed down only for sharp curves. Defendant relied on her own belief that driving 25 miles per hour would be all right for plaintiff's safety. In response to a question from the court, defendant, after having testified that a breeze was blowing, answered "Well, I remember that it was not a strong wind."

At a distance of 3.6 miles from the lumber store defendant testified she heard a "thud," looked in the rear view mirror on the left side of the VW and saw plaintiff lying on the left side of the road. A sheet of plywood was lying on her legs. Plaintiff had been seriously injured. The two other pieces of plywood remained on top of the VW.

Plaintiff was lying an uncertain distance beyond the middle of a sharp curve which defendant had passed. The police report indicated fresh blood on the right (not left) side of the road, which could have been consistent with a fall incident to the centrifugal force of the curve traversed just before. An approximate quarter inch indentation was present cross-wise to and as a "gully" in the center of the curve, but defendant testified she was not aware of the indentation as she drove over it.

The record is devoid of direct evidence to establish what happened. Plaintiff's injuries precluded testimony by her. Plaintiff at the time of the accident was about 22 years of age, weighed about 140 pounds, and was experienced in riding a motorbike. A few weeks earlier plaintiff and defendant had experienced heavy mattresses breaking their tie strings and blowing from the luggage rack at a place on the desert where the wind was stormy and the bus was being driven 45 or 50 miles per hour.

### Discussion

Respondent contends that Vehicle Code, section 21712, subdivision (a) is applicable to the facts of this case and renders both plaintiff and defendant negligent as a matter of law. Section 21712, subdivision (a) in essential part reads as follows:

"No person shall ride, and no person driving a motor vehicle shall knowingly permit any person to ride on any vehicle

or upon any portion thereof not designed or intended for the use of passengers.

"This . . . *subdivision* does not apply to an employee engaged in the necessary discharge of his duty or to persons riding completely within or upon vehicle bodies in space intended for any load on the vehicle." The technical meaning of the section has not received frequent attention. **[2]** "It is a cardinal rule that statutes should be given a reasonable interpretation and in accordance with the apparent purpose and intention of the law makers. Such intention controls if it can be reasonably ascertained from the language used. (citations)" (*County of Alameda* v. *Kuchel,* 32 Cal.2d 193, 199 [195 P.2d 17].)

In *Albania* v. *Kovacevich,* 44 Cal.App.2d 925 [113 P.2d 251], this court, with reference to an earlier version of the statute suggested that, "[d]oubtless this section was primarily intended to prevent persons from hanging on the outside portions of vehicles or from riding in positions which would add to the hazards which might normally be expected in the ordinary operation of such vehicles, or in the event such vehicles were struck by other vehicles." ██ Motor vehicles are functional devices and are designed and built, by and large, for the purpose of transporting passengers or cargo or both. The code section in its first sentence proscribes riding "on any vehicle or upon any portion thereof not designed or intended for passengers." Obviously the roof of a Volkswagen Microbus is not designed for the use of passengers nor is it "intended for any load on the vehicle." Such is the reason for the luggage carrier, which itself is not a vehicle nor a portion thereof; it is an afterthought, at least when not a part of the original vehicle. It follows that riding in a luggage rack is not riding upon a vehicle body in space intended for a load on the vehicle. While it is true that the literal language of the section could be construed to permit an inclusion of luggage racks or other appropriate accessory equipment as "space (upon vehicle bodies) intended for any load on the vehicle" this appeals to us as a strained and impermissible construction. Particularly is this so when we consider that the section is primarily concerned with proper and safe riding. It would be difficult to attribute to the Legislature a prescient contemplation of all the devices which ingenuity could develop for extension of design capabilities. We find apposite and guiding the words and concept of Mr. Justice Barnard above quoted from *Albania* and hold that Vehicle Code, section 21712, subdivision (a) does apply to the case at bench

thereby rendering both plaintiff and defendant negligent as a matter of law.

Actionable negligence includes, of course, the component of proximate cause. As stated in *Albania* v. *Kovacevich, supra,* 44 Cal. App.2d 925, 930: "The question whether respondents' negligence, if any, was a proximate cause contributing to their injuries was also a question of fact. Even where it appears that a statute has been violated the question as to whether such violation was one contributing to the injuries of the party has frequently been held to be one of fact. (*Watkins* v. *Nutting,* 17 Cal.2d 490 [110 P.2d 384].)'' But it has also been held to be a question of law as in *Reeves* v. *Lapinta,* 25 Cal.App.2d 680 [78 P.2d 465]. In the latter case the injury was incident to a violation of a municipal ordinance forbidding riding upon the "fender, steps, or running board of any street car or vehicle" (p. 681). The case under like circumstances, that is, the necessity of viewing the evidence in the light most favorable to plaintiff, considered both questions, i.e., was plaintiff contributorily negligent as a matter of law and should the issue of contributing negligence have been put to the jury. The court held that contributory negligence was established as a matter of law and that it was not a question for the jury. Quoting from *Lorry* v. *Englander Drayage, etc. Co.,* 108 Cal.App. 116 [291 P. 467], the court said: "In the absence of the ordinance the question of whether appellants were negligent in riding on the running-board would depend upon whether a person of ordinary prudence would have so ridden under the circumstances then existing and this would have been a question properly to be left to the jury (citations). But the ordinance enacted an absolute standard of conduct and removed from the jury the right to speculate as to what that ideal composite the man of ordinary prudence might or might not have done under similar circumstances. It thereby substituted certainty of conduct for uncertainty. If the violation of the ordinance proximately contributed to their injuries appellants were guilty of negligence as a matter of law." (*Lorry* v. *Englander Drayage, etc. Co.,* 108 Cal.App. 116, 118 [291 P. 467].)

A close study of *Watkins* v. *Nutting, supra,* 17 Cal.2d 490 [110 P.2d 384] cited in *Albania* discloses that it is not in conflict with *Reeves* v. *Lapinta, supra,* 25 Cal.App.2d 680. The former case was concerned with reconciling the parts of then Vehicle Code, section 562 which clearly put in comparison the conduct of a pedestrian with that of an operator of a motor

vehicle. The case at bench is concerned with concurrent and direct violation of the identical statutory inhibition by both parties.

While we are satisfied that it must be concluded that the unfortunate injuries of the plaintiff herein were proximately caused by the fact she was riding with defendant in a manner forbidden by law and inseparably connected with the injuries suffered from falling in the absence of explanation of how the accident happened, we would point out that Dean Prosser in his Law of Torts (3d ed.) suggests that consideration of "proximate cause" under the circumstances here involved is fallacious. The only questions to be answered are whether there is a causal connection between the proscribed act or omission and if so whether the statute is deemed to be one for the protection of the person charging the violation. "What the statute does or, does not do, is to condition the legality of the act, and to qualify or characterize it as negligent. Upon cause and effect it has no bearing at all. It is, of course, quite possible that the act or omission itself may have no sufficient causal connection with the result—a railway whistle means nothing to a cow. But where such a connection is found, the only question concerning the statute is whether it is to be construed to afford protection against the conduct of the defendant (read plaintiff), and so give the character of negligence to his act." (Prosser, Law of Torts (3d ed.) p. 195.) Touching the question of the applicability of section 21712, subdivision (a) to plaintiff's conduct: "The accepted rule now is that a breach of statute by the plaintiff is to stand on the same footing as a violation by the defendant. A few courts have held that the plaintiff's breach does not constitute contributory negligence as a matter of law, upon the ground that the statutes were enacted for the protection of others, and not of the actor himself. But it seems clear that safety statutes, such as speed laws and traffic rules, usually are designed for the broad purpose of preventing accidents or dangerous situations, in which the plaintiff is quite as likely to be hurt as the defendant; and it is not difficult to discover a purpose to protect him by setting up a standard of his own conduct, the unexcused violation of which is negligence in itself. If, as is infrequently the case, the statute is found to be intended solely for the protection of other persons, or the prevention of a different type of risk, the breach will be irrelevant, or at best evidence of negligence for the jury. The often repeated statement that in such cases the breach of statute is not the proximate cause of the harm has no more validity here than in

the case of a violation on the part of the defendant.'' (Prosser, Law of Torts (3d ed.) pp. 204-205.)

We are in accord with the views of the learned author and teacher and find no room for questioning their applicability to the case at bench. It follows that the plaintiff's folly embraced within the framework of her statutory negligence must preclude recovery for her injuries.

In passing we note plaintiff's comment that section 21712, subdivision (a) was not amended with reference to the holding in *Albania* v. *Kovacevich, supra,* 44 Cal.App.2d 925. While we are not positive what plaintiff had in mind on this point, we would suggest that addition of the word ''completely'' to the statute was in express recognition of that case.

A concomitant of the views we have expressed disposes of plaintiff's contention that the trial court failed to recognize a second and independent condition of negligence upon the part of defendant, i.e., the operation of the vehicle under the given circumstances as an issue for the jury. While our view of the evidence persuades us that any such issue at best would be speculation and conjectural and thus not for the jury, the position we take with respect to the effect of plaintiff's violation of the statutory inhibition against riding as she did must necessarily qualify plaintiff's conduct as contributorily negligent with respect to any injuries suffered as a result of falling during the operation of the vehicle.

 Plaintiff contends that the doctrine of ''last clear chance'' is applicable to the circumstances of the case. We do not agree. Plaintiff cites the recent case of *Kaake* v. *Lott,* 252 Cal.App.2d 895 [60 Cal.Rptr. 843] in support of the proposition but it is our view that the cited case demonstrates the inapplicability of the rule in the present instance. In that case a bicycle rider who changed lanes in front of an on-coming automobile was struck. The trial court instructed the jury on the ''last clear chance'' doctrine and then granted defendant's motion for judgment notwithstanding the verdict and for new trial, in the alternative, on the ground of insufficiency of the evidence and error in law in giving the instruction.

The conditions governing application of the doctrine are stated thus: ''It is improper, of course, to give the instruction if any one of the three elements set forth below and necessary to make the doctrine operative is lacking [citation]; and it is a question of law whether there is substantial evidence supporting the existence of each such element. [citation.] How-

ever, since a party is entitled to an instruction conforming to any theory which finds substantial evidentiary support [citation] which, for the purpose of this appeal must be viewed in the light most favorable to plaintiff [citation], the instruction was not erroneously given if the evidence, so viewed, warrants a reasonable inference that (1) plaintiff negligently placed himself in a position of danger, (2) defendant had actual or constructive knowledge that plaintiff could not escape from such situation, and (3) after that time had a last clear chance to avoid the accident, [Citation.]

''Whether such inferences could reasonably be drawn must be ascertained from a summary of the facts additional to those given to the investigating officer. Plaintiff testified that there were no other northbound cars in the vicinity other than defendant's when he made his diagonal turn to the left; this movement was admittedly carried out without a hand signal. As he continued on his way up to the point of impact, he had no knowledge as to the position of defendant's car except that she was in back of him; nor could he estimate her speed, simply stating that it was faster than his. Defendant, on the other hand, testified that she remained in the inner lane from the moment she first saw plaintiff about five car lengths ahead in the outer lane; while still in the outer lane, he looked over his shoulder but continued in that lane for some 12 seconds. When he started his left turn, she was still some five car lengths behind him. Defendant then went to her left in an effort to pass him; believing she could not do so, she then turned to her right, applying her brakes. Skid marks measured by the investigating officer were 50 feet overall which, according to his testimony, meant that there were 40 feet of actual skidding. The above is the extent of the testimony bearing on the subject.'' *Kaake* v. *Lott*, 252 Cal.App.2d 895, 898-899 [60 Cal.Rptr. 843].)

In our view the record fails to provide any evidence from which it could be inferred that defendant had actual or constructive knowledge that plaintiff was in a situation of peril from which she could not escape at the moment of the accident. The fact of 3.6 miles of uneventful travel would, indeed, suggest a contrary inference. Secondly, nothing had occurred to create a last clear chance to prevent the upcoming accident. No emergency, unique or unexpected situation was present. What plaintiff and defendant were doing was just what they had planned to do from the time of leaving the store where the plywood was purchased. The essential nature of a last clear chance has been described: ''Before giving further con-

sideration to the facts in the present case we may state that we believe that the very name of the doctrine under discussion is helpful in determining whether it may be applied to any given set of facts. It is designated as the *last clear chance* doctrine. In other words, it is not enough to relieve a plaintiff of his own negligence that the defendant may have had *a chance* to avoid the accident, but defendant must have had the *last chance* and also had a *clear chance* to do so by the exercise of *ordinary* care. That he should have had the *last chance* implies that his chance to avoid the accident must have come later in point of time than any similar chance on the part of the injured person. That he should have had a *clear chance* implies that he must have had more than a *bare possible chance* to avoid an unexpected peril created practically simultaneously with the happening of the accident by the negligence of the injured party." (*Poncino* v. *Reid-Murdock Co.,* 136 Cal.App. 223, 227 [28 P.2d 932], approved in *Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 296 [246 P.2d 663].)

Peculiarly applicable to this case is the statement in *Kaake* v. *Lott, supra,* 252 Cal.App.2d 895, that "[T]here is no satisfactory evidence as to the spot, *measured in time or distance,* at which this asserted last clear chance was open to her." (P. 900.) (Italics added.)

The views we have expressed with respect to the application of Vehicle Code, section 21712, subdivision (a) render unnecessary any discussion of error in rejecting expert testimony concerning aerodynamic forces or of burden in going forward with evidence.

The judgment is affirmed.

Brown, (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied October 14, 1968, and appellant's petition for a hearing by the Supreme Court was denied November 20, 1968.