Filed 1/11/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LAW OFFICE OF CARLOS R. PEREZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WHITTIER UNION HIGH SCHOOL DISTRICT,<br><br>    Defendant and Respondent. | B315375<br><br>(Los Angeles County<br>Super. Ct. No. 19STCP04238) |

APPEAL from an order of the Superior Court of Los Angeles County.  Mitchell L. Beckloff, Judge.  Reversed and remanded.

Law Office of Carlos R. Perez, Carlos R. Perez and Alejandra Gonzalez-Bedoy for Plaintiff and Appellant.

Law Offices of Eric Bathen, Eric Bathen and Richard D. Brady for Defendant and Respondent.

_____

The primary issue in this case is whether Respondent Whittier Union High School District (hereinafter Respondent or the District) is required to reimburse Appellant Law Office of Carlos R. Perez (hereinafter Appellant or Perez Firm) for the "cost of work product" under California Elections Code section, 10010, subdivision (f) (The California Voting Rights Act).[1] Appellant had sent Respondent a demand letter that resulted in Respondent changing its at-large voting system to district-based voting. This case turns on whether the trial court's determination that Appellant did not represent a "prospective plaintiff" under section 10010 requires evidence limited to identifying a person who has formally retained the lawyer, or whether it also encompasses a law firm working on behalf of one or more persons the law firm avers it will be able to name as a plaintiff if the demand letter is unsuccessful. We conclude that the trial court's finding that Appellant did not represent a prospective plaintiff is based on an overly restrictive interpretation of the statute. We further conclude that the "cost of work product" for which a prospective plaintiff is entitled to reimbursement is not limited to out-of-pocket expenditures by the prospective plaintiff, but also includes costs advanced by their lawyer. We remand to the trial court to determine in the first instance, in light of our decision, what costs are recoverable by Perez Firm.

**BACKGROUND**

1. **The California Voting Rights Act**

The California Legislature passed the California Voting Rights Act (codified as section 14027, hereinafter CVRA) to

---

[1] All undesignated statutory references are to the Elections Code unless otherwise noted.

address at-large elections that tended to dilute the ability of minority groups to elect candidates. The CVRA only applies to at-large elections and was intended to address " ' "the problem of racial block voting, which is particularly harmful to a state like California due to its diversity. . . ." ' " (See *Sanchez v. City of Modesto* (2006) 145 Cal.App.4th 660, 669.)

Section 14027 provides that "[a]n at-large method of election may not be imposed or applied in a manner that impairs the ability of a protected class to elect candidates of its choice or its ability to influence the outcome of an election, as a result of the dilution or the abridgement of the rights of voters who are members of a protected class, as defined pursuant to section 14026." When this happens, a trial court may order the implementation of authorized appropriate remedies including imposing district-based elections. (§ 14029.)

The Legislature amended the Elections Code to create a "safe harbor" procedure that would require a prospective CVRA plaintiff to notify a political subdivision by way of a demand letter before filing suit. (§ 10010.) Section 10010, subdivision (e)(1) provides:

> "Before commencing an action to enforce Sections 14027 and 14028, a prospective plaintiff shall send by certified mail a written notice to the clerk of the political subdivision against which the action would be brought asserting that the political subdivision's method of conducting elections may violate the California Voting Rights Act of 2001."

Section 10010, subdivision (e)(2) provides:

> "A prospective plaintiff shall not commence an action to enforce Sections 14027 and 14028 within 45 days of the

political subdivision's receipt of the written notice described in paragraph (1)."

Finally, section 10010, subdivision (f)(1) provides:

"If a political subdivision adopts an ordinance establishing district-based elections pursuant to subdivision (a), a prospective plaintiff who sent a written notice pursuant to paragraph (1) of subdivision (e) before the political subdivision passed its resolution of intention may, within 30 days of the ordinance's adoption, demand reimbursement for the cost of the work product generated to support the notice. A prospective plaintiff shall make the demand in writing and shall substantiate the demand with financial documentation, such as a detailed invoice for demography services. A political subdivision may request additional documentation if the provided documentation is insufficient to corroborate the claimed costs. A political subdivision shall reimburse a prospective plaintiff for reasonable costs claimed, or in an amount to which the parties mutually agree, within 45 days of receiving the written demand, except as provided in paragraph (2). In all cases, the amount of the reimbursement shall not exceed the cap described in paragraph (3)."

Under section 10010, subdivision (f)(3), "[t]he amount of reimbursement required by this section is capped at thirty thousand dollars ($30,000) . . . ."

## 2. Whittier Union High School District Converts to District-Based Voting in Response to Perez Firm's Demand Letter

On September 2, 2018, Appellant Perez Firm sent a letter on behalf of local residents titled "Demand for Compliance with

4

the California Voting Rights Act" that requested Respondent Whittier Union High School District comply with the California Voting Rights Act by converting from at-large method to district-based voting for electing its board of trustees. Appellant provided statistical evidence to support its claim that voting within Whittier Union High School District "is racially polarized" and unfairly disadvantages Latino voters. Appellant sent the letter "By Email Only" to Martin Plourde, Superintendent, and the Honorable Jeff Baird, Board Clerk, of Whittier Union High School District.

Under the "safe harbor" provision of section 10010, subdivision (e)(3)(A)-(B), Respondent had 45 days to agree that it would change from at-large to district-based elections. During this period, no prospective plaintiff could bring a lawsuit under the CVRA.

On October 9, 2018, Respondent's Trustees enacted Resolution No. 1819-11 which provided that Respondent would convert to district-based elections. After conducting public hearings on how Respondent should draw its districts, on February 19, 2019, Respondent officially adopted the resolution changing its elections to a district-based system.

### 3. Perez Firm Demands Reimbursement for Cost of Work Product

After the district adopted the resolution, Appellant sent an e-mail to Respondent's counsel on March 5, 2019, requesting payment for attorney's fees and other costs associated with generating the September 2, 2018 demand letter. Appellant sought the statutory maximum of $30,000. The costs included time spent by Appellant on communicating with its client regarding the status of claims and case strategy, legal research,

5

meeting and communicating with expert demographer Jesus Garcia, as well as costs of purchasing GIS Data and software licenses.

Respondent refused Appellant's request on the basis that section 10010 does not allow for attorney's fees. Respondent, however, was willing to consider whether Appellant was entitled to $15,000 for the cost of demographer Jesus Garcia if Appellant provided further documentation.

Appellant produced an invoice from the demographer, a check made payable to the demographer, and evidence of the demographer's expert analysis. Respondent continued to deny payment on the basis that documentation was insufficient.

### 4. Trial Court Denies Perez Firm's Petition for Writ of Mandate and Motion for Attorney's Fees

On September 27, 2019, Appellant filed a petition for writ of mandate to enforce Respondent's obligation to pay Appellant's cost of work product under section 10010, subdivision (f). After the parties appeared on September 23, 2020, the trial court denied Appellant's petition on the basis that there was no evidence that a prospective plaintiff had incurred the costs and fees of generating the demand letter.

The trial court found that "Petitioner's evidence supports a finding he represented a likely plaintiff in litigation against Respondent" and further agreed with Appellant that the Elections Code does not require the prospective plaintiff to be identified in the demand letter. Despite concluding that "[t]here is no question the demand letter resulted in a change to Respondent's election system," the trial court went on to determine that "the evidence does not support a finding Petitioner represented anyone at the time it sent the demand

6

letter." The trial court found that Appellant incurred a $15,000 expense for the demographer, but concluded that "the law firm did not pass the cost onto a prospective plaintiff *who paid the expense* and then was entitled to reimbursement." (Italics added.)

Appellant made a subsequent motion for attorney's fees and costs under Code of Civil Procedure section 1021.5. The trial court denied the motion without prejudice primarily on the basis that Appellant was not a "prevailing party" under the statute because Appellant "did not prevail on its petition and did not obtain a favorable judgment" ordering Respondent to pay Appellant $30,000.

The trial court incorporated the above rulings into its final judgment. Appellant timely appealed.

## DISCUSSION

### I. Standard of Review

On appeal from a judgment denying a writ of mandate, we review the trial court's legal rulings de novo. (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1057 ["[W]e are not bound by the trial court's determination of questions of law but may make our own independent determinations"]; citing *Evans v. Unemployment Insurance Appeals Bd.* (1985) 39 Cal.3d 398, 407 [same].) Additionally, we conduct "de novo review of questions of statutory construction." (*Western/California, Ltd. v. Dry Creek Joint Elementary School Dist.* (1996) 50 Cal.App.4th 1461, 1479.)

We review the trial court's factual findings for substantial evidence. (*Ford & Vlahos v. ITT Commercial Financial Corp.* (1994) 8 Cal.4th 1220, 1235.) "[S]ubstantial evidence is not synonymous with *any* evidence." (*Diego v. City of Los Angeles* (2017) 15 Cal.App.5th 338, 349 ["An inference may not be based

7

on speculation or surmise"].)  (See *People v. Johnson* (1980) 26 Cal.3d 557, 576 ["Evidence, to be 'substantial' must be 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value' "].)

## II.  "Prospective Plaintiff" Includes Persons on Whose Behalf a Law Firm Represents it is Working and Will be Able to Name as a Plaintiff

The trial court concluded that "the evidence does not support a finding Petitioner represented anyone at the time it sent the demand letter."  It appears this conclusion was based on the trial court's statutory interpretation of Section 10010 as limiting "prospective plaintiff" to cases where there is evidence identifying a named individual who has formally retained the lawyer.  The trial court did find that Appellant's "evidence supports a finding he represented a likely plaintiff in litigation." The trial court gave credence to Appellant's declaration that he identified as potential plaintiffs "no less than 4 community leaders including [his] wife, Cecilia Perez . . . [and] community activist and resident Margie Rodriguez and at least 2 others." The trial court concluded that Appellant "provided evidence about which prospective plaintiffs might have filed the litigation if Respondent did not comply with the demand it convert its election system."  As such, the trial court's statutory interpretation was that Appellant's representation of a "likely plaintiff" fell short of the requirement that the costs be incurred on behalf of a "prospective plaintiff."

Pursuant to our de novo review of the trial court's statutory interpretation, we believe the term "prospective plaintiff" connotes a person who meets the criteria for being a plaintiff, and whom the law firm anticipates is willing and able to take on the

8

role of plaintiff if necessary. "Prospective" is a term of anticipation, not certainty. The trial court's factual finding Perez Firm represented at least one "likely plaintiff" appears to contradict the court's implication that the firm would have had to search for a client when it submitted the demand letter.

This is not a case where a law firm dreamed up a legal claim for a hypothetical client. Perez Firm presented evidence that if it needed to go forward with litigation, it had several people it expected would be available to serve as a plaintiff. It presented the court with some of their names—one of them was even the spouse of plaintiff's counsel. Nothing more was needed to properly characterize Perez Firm's work as having been done on behalf of a "prospective plaintiff."

## III. The CVRA Does Not Limit Recoverable Work Product Costs to Those Personally Paid by the Prospective Plaintiff

As discussed above, the trial court concluded that Appellant was not entitled to fees or costs because "Elections Code section 10010, subdivision (f)(1) requires a prospective plaintiff to have incurred expenses associated with the demand letter. As noted by [the District], 'reimbursement' necessarily means the prospective plaintiff has incurred costs related to the demand letter. . . . [¶] Petitioner has made no showing a 'prospective plaintiff'—whomever may have ended up bringing the litigation—incurred any costs associated with the demand letter. Thus, there is nothing for [the District] to reimburse to a prospective plaintiff." (Fn. omitted.) The trial court also explicitly concluded that "[t]he law firm did not pass the cost onto a prospective plaintiff *who paid the expense* and then was entitled to reimbursement." (Italics added.)

9

The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the statute. (*Select Base Materials, Inc. v. Board of Equal.* (1959) 51 Cal.2d 640, 645 (*Select Base*).) In determining the intent of the Legislature, we first examine the words of the statute itself. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698, 170.) If the language of the statute is clear and unambiguous, there is no need for statutory construction. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 (*Lungren*).)

However, "the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose." (*Lungren, supra,* 45 Cal.3d at p. 735.) " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*People v. Coronado* (1995) 12 Cal.4th 145, 151.) The legislative purpose "will not be sacrificed to a literal construction" of any part of the statute. (*Select Base, supra,* 51 Cal.2d at p. 645.)

We presume the Legislature was aware the allocation of who pays costs, and when they are paid, is a matter of free contract between attorney and client. Lawyers, including those working on a contingency, may choose to absorb costs until the litigation is concluded. Plaintiffs' lawyers routinely take cases on contingency, with courts awarding plaintiffs their attorney's fees even though the plaintiff was either never obligated to pay fees to the attorney, or was entitled to defer payment of these fees until after the litigation was concluded. In these situations, nothing

10

would be gained by requiring the lawyer to force the client to pay the costs merely to obtain reimbursement for those costs.

We agree with Appellant that requiring a prospective plaintiff to pay costs to a law firm in order to be eligible for the reimbursement the statute provides would turn the CVRA on its head, given that it is, as the trial court recognized, a remedial statute designed to equalize the voting power of disenfranchised minority communities that traditionally lack socioeconomic resources. (See *Jauregui v. City of Palmdale* (2014) 226 Cal.App.4th 781, 807.) The Legislature adopted sections 14025 through 14032 to prevent an at-large electoral system from diluting minority voting power, thereby impairing a protected class from influencing the outcome of an election. (*Jauregui*, at p. 807; see also *Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1228–1229; *Glaviano v. Sacramento City Unified School Dist.* (2018) 22 Cal.App.5th 744, 752 [statutory language referring to " 'reasonable attorney's fees incurred by the employee' " authorizes a fee award even where the employee did not actually pay any fees].)

Given the purpose of the CVRA, we see no reason the Legislature would have intended to bar impoverished clients who could not afford cost outlays from taking advantage of section 10010's benefits. We believe the trial court erred in concluding that reimbursement requires a prospective plaintiff to "incur" the cost of work product by personally transferring the funds from their wallet or bank account. (See *Glaviano, supra,* 22 Cal.App.5th at p. 752; *Walent v. Commission on Professional Competence etc.* (2017) 9 Cal.App.5th 745, 749 [Statutory entitlement to " 'reasonable attorney's fees incurred by the employee' does not require that the employee actually pay, or

11

become obligated to personally pay, the fees at issue"].) Thus, limiting work product reimbursement to costs a plaintiff was able to afford, excluding costs advanced by counsel, would contravene the intent and purpose behind CVRA's financial encouragement of meritorious demand letters.

## DISPOSITION

We reverse and remand so that the trial court may, in light of our decision, determine the "cost of work product" recoverable by Appellant. The trial court did not address whether attorney's fees are recoverable as the cost of work product, so we do not reach that issue. Nor do we decide whether Appellant is alternatively entitled to attorney's fees and costs under Code of Civil Procedure section 1021.5, for demand letter work and/or fees for bringing the petition for writ of mandate. Appellant may present any such claims to the trial court for decision in light of the court's future decision on awarding the cost of work product. Appellant is entitled to costs on appeal.

## CERTIFIED FOR PUBLICATION

HARUTUNIAN, J.*

We Concur:

GRIMES, Acting P. J.        WILEY, J.

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12